ANN T. SIMPSON, PETITIONER, *v.* EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, DEPARTMENT VI, AND THE HONORABLE HOWARD W. BABCOCK, JUDGE THEREOF, RESPONDENTS.

No. 6875

December 6, 1972                    503 P.2d 1225

[Rehearing denied January 24, 1973]

*Heaton & Spizzirri,* of Las Vegas, for Petitioner.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Chief Deputy for Appeals, Clark County, for Respondents.

## OPINION

By the Court, GUNDERSON, J.:

The respondent court denied petitioner Simpson's motion to dismiss a murder indictment returned by the Clark County Grand Jury. Therefore, she has petitioned this court to prohibit further proceedings under that indictment, which recites:

"The Defendant above named, ANN SIMPSON, is accused by the Clark County Grand Jury of the crime of MURDER (Felony—200.010) committed at and within the County of Clark, State of Nevada, on or about the 27th day of May, 1970, as follows: did wilfully, unlawfully, feloniously and with malice aforethought kill AMBER SIMPSON, a human being."

Apparently desiring guidelines for pleading like cases, the Clark County District Attorney has requested us to entertain Mrs. Simpson's petition. The District Attorney tenders no suggestion that her petition is untimely, that the deficiency it asserts has been waived, that the deficiency is nonjurisdictional (NRS 34.320), or that petitioner has another plain, speedy and adequate remedy in the ordinary course of the law (NRS 34.330). For purposes of this case, the District Attorney in effect has agreed that a writ of prohibition should issue, if the indictment in question is insufficient. Hence, in this test case, we meet only the issue the parties present, i.e. whether under Nevada law a murder indictment is sufficient, when it alleges nothing whatever concerning the means by which the crime was committed. In our view, it is not.

The facts of this case illustrate graphically the threats to due process that indefinite indictments necessarily pose. During oral argument to this court, the prosecutor virtually acknowledged that the State cannot prove murder, and hence cannot plead that crime with certainty. Evidently, the State at most hopes to establish involuntary manslaughter, on a theory of criminal negligence.[1] This being so, to prove murder, the State

---

[1]During oral argument of this matter, the following colloquy occurred:

Prosecutor:

". . . We do not know whether the baby died where it was found in the trunk, whether it died in the passenger [sic], whether it died from other things. There's absolutely nothing on the body showing any

apparently must locate critical evidence not now known, and proceed on some theory of essential facts not yet conceived.

1. Obviously, petitioner is entitled "to be informed of the nature and cause of the accusation" against her. U.S. Const. amend. VI. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." Cole v. Arkansas, 333 U.S. 196, 201 (1948). The common law secured these fundamental rights by requiring that an indictment set forth, inter alia, the manner or means by which the offense allegedly was committed. Vol. III Bishop's New Criminal Procedure, § 502, § 514 (2nd Ed. 1913); Wharton on Homicide, § 563 (3rd Ed. 1907). Of course, our legislature might have implemented such rights in some other appropriate way, e.g. by authorizing a totally vague indictment but providing procedures through which particulars might be obtained. Cf. Neusbaum v. State, 143 A. 872, 876 (Ct.App.Md. 1928). However, by NRS 173.075, the legislature has adopted portions of Federal Rule of Criminal Procedure 7(c),[2] and in

---

external injuries. The tissues showed that it had died of heat prostration. Now we could assume that she had gone into this bar; we could assume that she left the baby in the car; but strictly, if she came up with some other story, the standard instructions under which these jury trials have been tried for a number of years the question is whether or not the information is true."

Justice Gunderson:

"Mr. Garner, it sounds to me like you're telling us you don't just have a problem of pleading; you have a problem of proof. Now, what is your theory of the case, what acts do you claim Ann Simpson did that resulted in the death of this child?"

Prosecutor:

"I'd say it was neglect by allowing her to be in a place, a year-and-a-half-old baby, where heat prostration occurred. I would say that would be negligent homicide; we charge open murder even though it is probably a voluntary manslaughter case—involuntary."

Justice Gunderson:

"Then your problem really is that you have a theory that you think you can substantiate, at least to some degree, and you could allege those facts couldn't you?"

Prosecutor:

"It would be a negative inference; the only thing we could plead would be neglect, yes, that she had left the baby somewhere where it died of heat prostration."

[2]*173.075 Nature and contents generally.*

"1. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the district attorney. It need not contain

NRS 179.370 it has set forth an approved form of murder indictment.[3]

NRS 173.075(1) expressly provides that the "indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

a formal commencement, a formal conclusion or any other matter not necessary to such statement.

"2. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means.

"3. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

"The plain and concise words of Rule 7(c) [NRS 173.075] implement vital guaranties of the Fifth and Sixth Amendments. The Rule makes it unnecessary, of course, to treat as a constitutional issue every dispute about whether an indictment is sufficiently clear and unambiguous. But the pertinent criteria derive none the less from our fundamental law . . . Our concern is not with matters of pleading etiquette or esthetics, but with substantial rights of the most essential kind." United States v. Agone, 302 F.Supp. 1258, 1259 (S.D.N.Y. 1969).

[3]"*179.370 Indictment.* An indictment may be substantially in the following form:

### INDICTMENT

STATE OF NEVADA,     }
COUNTY OF............................................. }   ss.

The State of Nevada, plaintiff, against A.B., defendant (or John Doe, whose real name is unknown). Defendant A.B., above named, is accused by the grand jury of the county of ........................., of a felony (or of the crime of murder or other name of crime), committed as follows: The said A.B., on the ........ day of ................, A.D. 19......, or thereabouts, at the county of ........................., State of Nevada, without authority of law and with malice aforethought, killed Richard Roe, by shooting with a pistol (or with a gun or other weapon, according to the facts).

 

............................................................

District Attorney
or District Attorney, by deputy."

In deciding the sufficiency of a murder indictment under this statutory form, this court said in State v. Millain, 3 Nev. 409 (1867): "There are, indeed, but two questions for us to consider in connection with this indictment. First, does it conform substantially to our statutory form; and second, had the Legislature power to dispense with the formality of the common law indictment?" Id., at 436. The court upheld the legislature's power to prescribe such a form, and upheld the indictment in question, specifically noting: "The time and place are also stated, and the instrument or means used to produce death." Id., at

NRS 173.075(2) indicates this should either include the means by which the offense was accomplished or show means are unknown.[4] NRS 179.370 likewise recognizes that a proper murder indictment should, among other things, contain some reference to means. "This skeleton form shows conclusively that the legislature, by their enactment that an indictment should contain the facts constituting the offence charged, intended it should contain those showing the mode and manner of its perpetration." Shepherd v. The State, 54 Ind. 25, 27 (1876).

Three Idaho cases illustrate that such statutes may not lightly be swept aside. Early in its history, interpreting statutes much like our own, the Idaho Supreme Court held insufficient a manslaughter information that did not allege means. State v. Smith, 138 P. 1107 (Ida. 1914). Thereafter, the court overruled itself, and upheld a murder information like the indictment before us. State v. Lundhigh, 164 P. 690 (Ida. 1917). Ultimately, however, the court was constrained to overrule itself again, when confronted with a situation concretely evincing the dangers inherent in indefinite indictments. State v. McMahan, 65 P.2d 156 (Ida. 1937).

In *McMahan,* a physician was arrested for manslaughter, and held to answer after a preliminary hearing that indicated he had committed a criminal abortion resulting in a death. The prosecutor thereupon filed an information charging that on or about February 4, 1936, at Nez Perce County, Idaho, defendant committed the crime of manslaughter as follows: "then and there did wilfully, unlawfully and feloniously kill one Stella Fleischman, a human being, contrary to the form of the statute in such case made and provided." The trial court overruled

---

438. The court apparently considered this important to the issue of substantial compliance with the statute. To us, this seems correct; for the statute's words, "may be substantially in the following form," cannot be regarded as dispensing with fundamental pleading requirements of the common law, except to the extent intended by the statute, which contemplates means will still be pleaded.

[4]Thus, in accord with practice elsewhere, NRS 173.075(2) eliminates any prospect that requiring means to be alleged will work injustice to the State. "When matters or things which are ordinarily proper or necessary to be alleged are in fact unknown to the grand jury or the prosecuting attorney, it is proper to allege in the indictment or information that they are unknown. This rule finds its most frequent application in allegations as to persons or the names of persons unknown and the ownership of property involved in the offense, but it is also sometimes applied in allegations as to the exact manner or means of committing the offense, or some element thereof, and as to amounts involved." 4 R. Anderson, Wharton's Criminal Law and Procedure, § 1763 (1957).

the defendant's demurrer, and what followed suggests what might occur in any case, under such vague charges. As the Idaho Supreme Court said:

"At the trial in the district court the prosecution offered evidence tending to show an abortion had been performed which resulted in the death of the deceased, but it was entirely insufficient to sustain a conviction based on that theory, if one had been secured. Testimony, by and on behalf of appellant, showed he treated the woman for general peritonitis from which disease she died. On rebuttal the prosecution produced evidence showing negligence and lack of skill in the treatment prescribed and administered by appellant, and the trial resulted in a verdict that he was guilty of involuntary manslaughter 'on the ground that he committed an act that might produce death and did so without due caution and circumspection.' . . .

"It was not until during the trial that appellant or his counsel were in any manner informed that he was brought before the bar of justice to answer for a homicide committed through negligence and carelessness. He was entitled to know, before being required to plead to the information, the nature of the charge against him, and it would have told him that had it been drawn in conformity to the plain mandates of the statute. Had it so informed him, he would have been in position to pre-pare his defense. Without knowledge as to the nature of the charge upon which he was to be tried, he could not do so.

"To put a man on trial without giving him, in the information, *a statement of the acts constituting the offense* in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended', and to let him know these facts, for the first time when his trial is in progress, is to deprive him of the protection the statute was designed to give him and deny him due process of law in violation of . . . the Constitution." Id., at 159–160; emphasis in original.[5]

Considering the language of Fed.R.Crim.P. 7(c), from which NRS 173.075 is derived, the United States Supreme

---

[5]The instant case does not require us to consider how particular an allegation of means must be; however, in other states, courts have interpreted their statutes to require some particularity. See, for example: State v. Warner, 237 A.2d 150 (Me. 1967); Cozart v. State, 171 So.2d 77 (Ct.App.Ala. 1964); Northern v. State, 203 S.W.2d 206 (Tex.Crim. App. 1947); Langham v. State, 11 So.2d 131 (Ala. 1942); Wilson v. State, 8 So.2d 422 (Ala. 1942); People v. Quimby, 99 N.Y.S. 330 (App.Div. 1906). Such courts would unquestionably hold deficient an indictment containing no allegation of means whatever.

Court has also held an indictment is deficient unless it "sufficiently apprises the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763 (1962). Furthermore, the Supreme Court noted an indefinite indictment not only deprives a defendant of such notice, but in effect allows a prosecutor or court to usurp the function of the Grand Jury:

"To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Id. at 770.[6]

Accordingly, we believe the following formulation of the law, by one of the leading authorities, correctly states the principle that must govern our decision:

"Whether at common law or under statute, the accusation must include a characterization of the crime and such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation, and the description of the offense must be sufficiently full and complete to accord to the accused his constitutional right to due process of law." 4 R. Anderson, Wharton's Criminal Law and Procedure, § 1760, at 553 (1957).

2. Although the State has referred us to no pertinent contrary authority, it suggests a definite indictment is unnecessary in this case, because petitioner has access to the transcript of proceedings before the Grand Jury. This argument is untenable, for several reasons.

First, as the authorities just discussed show, a fundamental vice of indefinite charges is that they permit prosecutors to try cases on theories totally different from those propounded earlier, in proceedings before the Grand Jury or magistrate. Second, since NRS 173.075(1) entitles an accused to a "definite *written* statement of the essential facts," that statute in particular repels the idea that we may countenance an indefinite

---

[6]Although we have discovered no federal cases specifically treating the matter, approved federal forms for murder indictments indicate means should be alleged. Forms 1 and 2, Appendix of Forms, 18 U.S.C.A.

indictment whenever we feel a defendant might glean the prosecutor's theory of means from whatever evidence he presented to show probable cause. Moreover, some theory or theories of means will almost always be suggested by such evidence; therefore, if that justifies noncompliance with NRS 173.075 and 179.370, those statutes have no real force at all. Furthermore, we have heretofore said: "The challenge to the sufficiency of the indictment, where not made until after conviction and without a showing of prejudice, will be tested by a reduced standard, including reference to the Grand Jury transcript." Vincze v. State, 86 Nev. 546, 549, 472 P.2d 936, 938 (1970); Logan v. Warden, 86 Nev. 511, 471 P.2d 249 (1970). Thus, we have recognized the existence of a normal standard, that does not envision reference to such transcript.

An element of waiver is involved, when an accused proceeds to trial without challenging the indictment. Thereafter, he should not be heard to complain if the indictment, with the Grand Jury transcript, gave notice of what later transpired at trial; and to determine this, we can examine the trial transcript also. However, when challenge is timely, no basis exists for measuring the accused's rights by any standard other than that our legislature has established; nor can we know how helpful the Grand Jury transcript will be in augmenting an indefinite indictment; the trial transcript, of course, is not yet available. Therefore, when a timely challenge is tendered prior to trial, every justification for applying what we have recognized to be a "reduced standard" is absent; and we are loath to spare prosecutors their statutory obligation to draft coherent indictments, by assigning defense counsel and the courts the burden of divining absent allegations from other sources.

The indictment under consideration would allow the prosecutor absolute freedom to change theories at will; it affords no notice at all of what petitioner may ultimately be required to meet; thus, it denies fundamental rights our legislature intended a definite indictment to secure. Furthermore, in this case, the indefinite indictment obscures the reality that the prosecution may be unable to frame a proper indictment for murder, consistently with facts now known. The alternative writ of prohibition heretofore issued is made permanent, without prejudice to a new and sufficient accusation.

ZENOFF, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.