ROBERT LOUIS RHODES, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 6935

January 20, 1975                    530 P.2d 1199

18

*Morgan D. Harris,* Public Defender, and *Robert Stott,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *Charles L. Garner* and *Daniel M. Seaton,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This appeal is from judgment and sentence entered upon jury verdict finding Robert Louis Rhodes guilty of first degree murder and directing his imprisonment for life with the possibility of parole. We have considered the several claims of error and conclude that Rhodes received a fair trial and that the judgment and sentence may stand.

1. First, it is claimed that the grand jury indictment is fatally defective since it alleged nothing whatever concerning the means by which the crime was committed. Of course, such an allegation is essential. Simpson v. District Court, 88 Nev. 654, 503 P.2d 1225 (1972). Here, however, Rhodes, after losing his challenge to the sufficiency of the indictment in the district court, failed to pursue his point further by appropriate writ. Had he done so, prohibition would have issued without prejudice to a new and sufficient accusation. Simpson v. District Court, supra. Instead, he elected to proceed to trial. Consequently, his present attack upon the sufficiency of the indictment is to be judged by a reduced standard which permits our examination of the trial transcript to augment the faulty indictment. Simpson v. District Court, supra.

The transcript shows that Rhodes shot his victim. Indeed, he does not now assert that the homicide was otherwise accomplished, that his ability to defend was impaired by reason of the faulty indictment, or that he was in any way surprised or prejudiced thereby. It is apparent that he proceeded to trial upon the indictment as drawn because it was not important to him to compel an allegation concerning the means by which the homicide was committed. We, therefore, deny his present challenge.

2. Rhodes was 17 years old when the homicide occurred. Since he was a minor he contends that the charge against him fell within the jurisdiction of the juvenile court and that the district court lacked authority to hear the case without a certification that he stand trial in that court as an adult.

It is clear that if a minor, 16 years or older, commits a capital offense, the matter need not be referred to the juvenile division. NRS 62.080; 62.050; Lehmann v. Warden, 87 Nev. 24, 480 P.2d 155 (1971). Rhodes argues, however, that the subsequent decision of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238 (1972), nullifies the mentioned statute and our Lehmann opinion. Although Furman v. Georgia, supra, proscribed the death penalty, it did not purport to treat the underlying gravity of "capital offenses" for other purposes. We have so ruled with regard to bail, Jones v. Sheriff, 89 Nev. 175, 509 P.2d 824 (1973), and now extend that view to encompass the present issue. Juvenile court certification is not

necessary when a minor is charged with a capital offense. Lehmann v. Warden, supra, continues to be viable.

3. Robert Born was shot in the head while at his grocery store in Las Vegas. The cash register was pried open and the money stolen. Rhodes was on probation when the killing occurred. His supervisory probation officer had received word that Rhodes was in possession of certain guns and had stated that people were looking for someone who had killed a grocer. Consequently, that officer and a companion probation officer decided to question Rhodes concerning his possible involvement with the homicide.

The interrogation occurred at the jail where Rhodes was in custody on other charges. The juvenile officers did not protect Rhodes' privilege against self incrimination by first warning him of his rights as required by Miranda v. Arizona, 384 U.S. 436 (1966). During the course of their conversation Rhodes confessed that he had killed Born. Although the Miranda warnings were not given to assure Rhodes' awareness of his constitutional rights, there is absolutely nothing otherwise to suggest that his confession was coerced or involuntarily given. Indeed, the record reflects that Rhodes desired to tell his story of the crime in an effort to relieve destructive inner feelings, and that his confession was voluntarily given without coercion, actual or psychological.

The probation officers immediately notified the police that Rhodes should be interrogated, but did not tell them of the confession. The police came to the jail that same day, warned Rhodes of his constitutional rights in accordance with the commands of Miranda, and proceeded to question him. Rhodes orally confessed fully to them, and then signed a typewritten confession. The probation officers to whom Rhodes previously had confessed were present during the interrogation by the police officers.

Before trial, counsel for Rhodes moved to suppress all confessions. That motion was granted with regard to the confession before the probation officers, but denied as to the others. Since the successive confessions appear to have been a part of one continuous process, the failure of the first interrogators to honor the constitutional rights of Rhodes fatally infected the subsequent interrogation which followed in unbroken sequence. White v. State, 82 Nev. 304, 308, 417 P.2d 592 (1966). Accordingly, the motion to suppress should have been granted

as to all confessions. However, this is of no moment in the case at hand since none of the confessions was offered in evidence at trial.[1]

The identity of a key prosecution witness was, however, secured from the confessions, and also information which led to the discovery of other physical evidence: a gun, metal fragments, and latent fingerprints. The testimony of the witness, a friend of Rhodes to whom he also had confessed his crime, and the mentioned physical evidence was received at trial over the objection that all such evidence was the fruit of a poisonous tree, that is, evidence secured as the result of illegal confessions and, therefore, inadmissible.

Hence, the issue: May the fruits of confessions given in violation of the procedural safeguards of Miranda be received in evidence if the confessions otherwise are shown to have been freely and voluntarily given?

a) On the evening of the homicide, Rhodes went to the home of a female friend, Patricia Lennon. During the course of their conversation, he told her that he had gone to the grocery store to rob it, hit the proprietor and then shot him, and had pried the cash register open with a screw driver. He also showed her the gun that he had used. She testified to those admissions, and to other statements made by Rhodes. All such statements made by Rhodes were volunteered, voluntary and admissible. Cf. State v. Billings, 84 Nev. 55, 436 P.2d 212 (1968), where volunteered and voluntary statements to a police officer which were not the result of police interrogation, were held to be admissible. Obviously, the statements made by Rhodes to Patricia Lennon have nothing whatever to do with his Fifth Amendment privilege against self incrimination, and he concedes this to be so. He does contend, however, that since the identity of Patricia became known to the police by reason of illegal confessions to them, she was barred from testifying.

This question recently was considered by the United States Supreme Court in Michigan v. Tucker, 417 U.S. 433 (1974). The Court there ruled that the testimony of such witness need not be excluded where there has been no direct infringement upon the suspect's privilege against compulsory self incrimination, but only a violation of the prophylactic rules which Miranda developed to protect that right. As already noted, the

---

[1]Inculpatory statements given by Rhodes to the police officer (not his full confession) were received in evidence during the State's rebuttal of the defendant's case, and will later be discussed.

confessions were not compelled. There was no direct infringement upon Rhodes' privilege against self incrimination. In line with Michigan v. Tucker, supra, the testimony of the witness Lennon properly was received.

b) The reasoning of Tucker, supra, with regard to the identity of a witness applies with equal force to real or physical evidence which becomes known to the police through inadmissible confessions. Consequently, the gun, metal fragments and fingerprints properly were admitted since the confessions themselves were not compelled.

4.   Rhodes did not testify. The defense which he proffered through expert medical testimony centered on the proposition that at the time of the crime Rhodes' mental state was such that he was incapable of forming a specific intent to rob or of premeditating murder. The State countered this evidence with expert medical evidence of its own.

In addition, however, the State offered, and the court, over objection, received testimony from one of the police officers to whom Rhodes had confessed. Although that officer did not relate the full confession, he was allowed to testify that Rhodes admitted entering the grocery store with the intention of robbing it. It was, and is the State's position that such inculpatory admissions were properly received to rebut the defendant's expert testimony.

The trial court erred in allowing the police officer to so testify. As already noted, the State could not have used such testimony to prove guilt during the presentation of its case in chief and did not attempt to do so. That evidence did not acquire the status of admissibility simply because the defendant offered medical opinion evidence as to his mental capacity.

In the context of this case, however, we believe that the error was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250 (1968); Chapman v. California, 386 U.S. 18 (1967). The jury had already listened to the volunteered and voluntary confession of the defendant as related by the witness Lennon. Other physical evidence tying the defendant to the crime also had been received. The case against him was overwhelming.

5.   The final claim of error may summarily be dismissed. The court was not obliged to instruct the jury on the subject of

24

the voluntariness of the confessions made by Rhodes to law officers since such confessions were not offered in evidence. Cf. Carlson v. State, 84 Nev. 534, 445 P.2d 157 (1968); Grimaldi v. State, 90 Nev. 83, 518 P.2d 615 (1974). His volunteered and voluntary statements to the witness Patricia Lennon are not embraced by the so-called Massachusetts Rule with which Carlson, supra, and Grimaldi, supra, were concerned.

The judgment of conviction and the sentence thereon are affirmed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and ZENOFF, JJ., concur.