EDWARD D. ECKERT, Appellant, *v.* STATE OF NEVADA, Respondent.

No. 7606

March 27, 1975                    533 P.2d 468

[Rehearing denied April 18, 1975]

*Rogers, Monsey, Lea, Woodbury & Sheehan,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *George E. Holt,* District Attorney, and *Dan M. Seaton,* Chief Deputy District Attorney, Clark County, for Respondent.

184

## OPINION

By the Court, ZENOFF, J.:

The body of Lee Page Merkle was found on the outer perimeters of the parking lot at Clark County's outdoor sports stadium in the vicinity of Henderson, Nevada, and the metropolitan area of Las Vegas. The body was found in the early morning hours of December 26, 1971, with nine bullet holes made from three different weapons: a 9 millimeter, a .380 caliber and a .22 caliber.

Late in 1972, Gordon Overton, James Hilt and the appellant, Edward D. Eckert, were separately arrested and charged with the commission of the murder of Merkle.

Events leading to their arrest commenced in the small community of Shawnee Mission just outside of Kansas City, Kansas, where Eckert and Overton, both then 17 years of age, had been casual acquaintances. Hilt, a late comer on the scene, was older than the other two and apparently of some affluence because money seemed to be readily available to him. In a series of events leading up to the crime, they had practiced firing at a shooting range in the small community, where Hilt at that time provided the money for the purchase of a 9 millimeter automatic Smith and Wesson for himself and a Browning .380 for Eckert. Eckert signed the Federal Arms Regulation forms because he was the only one of the three with a Kansas driver's license which was a prerequisite to the buying of the guns.

Later that day, they decided to go to Las Vegas, Nevada, Overton testifying that their purpose was to just have a good time, but Eckert testified he went along because Hilt hired him to drive a truck back from Las Vegas for the sum of $600.00. While driving in Hilt's car on the way to Las Vegas, the automobile broke down near Thoreau, New Mexico, for the rest of the trip.

From there the story differs. Overton testifying against Eckert on behalf of the State said that all three went on to Las Vegas together. Eckert said that he was left behind to watch over Hilt's broken automobile. Later, he said, Hilt returned from Las Vegas in the evening hours of December

26, picked him up and together they returned to the Kansas City area. Overton testified, on the other hand, that while the three were in Las Vegas and roaming around that area they picked up Merkle who had just left a bar near the Boulder highway. Again according to Overton, after Merkle entered the car Eckert threatened to shoot Merkle for no apparent reason, ordered Hilt to stop the car, Merkle to lie on the ground and that Eckert then fired three shots into the prone body of Merkle. Eckert turned his weapon to Hilt and Overton compelling those two to fire shots into Merkle so that all three were in the caper together. They later dispersed, Overton to return home on the telephonic orders of his father whom he called from Las Vegas. He claimed that he didn't know what ever happened to Hilt and Eckert thereafter except that Eckert by telephone from time to time threatened to kill him if he "talked."

Eckert's version sharply differs. His testimony was that when Hilt picked him up in Gallup on December 26 he knew nothing of any murder or any other unusual experience of the other two, that a plausible explanation was given him by Hilt for Overton's return directly to Kansas City. Later, apparently the weapons were disposed of by Hilt to different persons.

Hilt refused to testify for either party claiming 5th Amendment privileges against self-incrimination. Overton pleaded guilty to involuntary manslaughter. His time in the county jail after arrest was commuted to time served. The jury found Eckert guilty of murder, sentenced him to life imprisonment with possibility of parole. He appeals claiming that there was no evidence to corroborate Overton's testimony connecting Eckert with the murder which, of course, is essential in the case where a defendant is on trial and the evidence or testimony of an accomplice is being used against him. Also, Overton on cross-examination spontaneously stated that he had passed a polygraph test and this, too, was claimed as prejudicial error.

1. NRS 175.291[1] requires that corroborative evidence

[1]NRS 175.291 holds that: "A conviction shall not be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."

must, without the aid of the accomplice, tend to connect the defendant with the commission of the offense. It is insufficient if it merely shows the commission of the offense or the circumstances thereof. Cf. Austin v. State, 87 Nev. 578, 491 P.2d 724 (1971). Eckert claims that the record is void of such evidence.

The only evidence with corroborative value consists of the purchase of the two weapons at the shooting range. The testimony of both Overton and Eckert was that the weapons were purchased and a .22 pistol taken along because they heard that Las Vegas was a rough place and that they should have them in their possession for protection.[2] True, the victim was killed by three different weapons of the type in possession of the three persons. One was positively identified as one of the murder weapons. Other than that, nothing independent of Overton connects Eckert with being in Las Vegas to participate in the killing. As a matter of fact, an eyewitness maintenance worker at the Gallup motel near which they had parked the automobile positively identified Eckert at the time or thereabouts that the crime was committed. In other respects the only other incident was the issuance of a speeding citation to Eckert just past midnight on December 27 by a patrol officer in the Gallup vicinity but the officer was not even sure that Eckert was or was not towing an automobile as Eckert had testified, but the value of that evidence is uncertain. According to Eckert he was caught speeding while he was driving the rented car towing the broken automobile with a chain. It may have been possible for Eckert to have been in Las Vegas and already returned to Gallup at the time of the citation but it would be a matter of pure speculation.

Evidence to corroborate accomplice testimony does not suffice if it merely casts grave suspicion on the defendant. Austin v. State, supra; People v. Luker, 407 P.2d 9 (Cal. 1965). The underlying purpose of the accomplice statute requiring corroborative evidence is to prevent false accusations as well as false convictions. The dangers are too great in view of the self-purposes to be served by Overton to suggest that the contents of this record supply the needed corroboration to uphold Eckert's conviction. Cf. State v. Wyatt, 84 Nev. 731, 448 P.2d 827 (1968); Ex Parte Hutchinson, 76 Nev. 478, 357 P.2d 589 (1960). (While these are habeas

---

[2] A .22 caliber pistol had been taken by Overton from his father without the father's knowledge.

corpus cases testing the sufficiency of the evidence of an accomplice witness after a preliminary hearing they nevertheless are expressive of the principle herein involved.)

2. During cross-examination Overton volunteered that he had passed two polygraph tests. The parties stipulated that the statement be stricken from the record and the court admonished the jury to disregard the statement. Eckert also tried in rebuttal to testify that he had passed a polygraph test which was also stricken and the jury admonished. In the context of the entire record the admonitions to the jury were sufficient and there was no error.

Discussion of other issues is unnecessary. The conviction rests entirely on the uncorroborated testimony of the accomplice, Overton, and we must therefore reverse and remand for a new trial.

Reversed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.