ROBERT J. GLOBENSKY, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 10751

January 24, 1980                              605 P.2d 215

*Donald E. Gladstone,* Reno, and *Paul Elcano,* Reno, for
Appellant.

*Richard Bryan,* Attorney General, Carson City; *Calvin R.
X. Dunlap,* District Attorney, and *Maureen F. Sheppard,* Dep-
uty District Attorney, Washoe County, for Respondent.

**OPINION**

By the Court, MANOUKIAN, J.:

Robert J. Globensky appeals from a conviction by jury for second degree murder. NRS 200.010, 200.030. He alleges the commission of several errors below, and we consider three of the claims. They are: (1) it was error to admit uncorroborated accomplice testimony; (2) his due process rights were violated as a result of the use of a prosecution witness granted immunity; and (3) the cause of death was neither sufficiently pled nor proven. We affirm.

On April 13, 1977, the body of a young male, alleged to be that of Earl Raymond Sledge II, was uncovered in the basement of a Reno home. The house had been previously occupied by Robert and Margaret Globensky and their children. Earl Sledge was the natural son of Mrs. Globensky and the step-son of Mr. Globensky. The death of the person whose body was found apparently occurred during the time the couple occupied the house.

On July 27, 1977, the Washoe County Grand Jury indicted appellant for the murder of Earl Raymond Sledge II. The indictment stated that appellant, on or between July 1 and July 11, 1976, killed Earl Sledge, a five and one-half year old boy,

"by inflicting upon said child physical beatings and mortal blows to the head and by further wilfully neglecting said child after such injuries had been inflicted, from all of which the said child died within the same period of time."

At trial, the Chief Deputy Coroner, Ralph Bailey, testified as to his examination of the discovered body which was found in a shallow grave beneath the home. Bailey said that no skull was found initially. The skull was discovered a short time later, a few feet away from the rest of the body. Bailey further testified as to his identification of the body, made by matching partially attached skin on the feet to birth certificate records.

Dr. Anton P. Sohn, a pathologist, testified that the cause of death was a fracture at the basilar area of the skull. The fracture was apparently caused by a significant blow to the head, causing a separation of the skull sutures. The pathologist testified that the fracture occurred by hitting the head with a blunt object or by the head striking a stationary object. The doctor further testified that in his opinion the injuries to the child were forceful and traumatic. Mrs. Globensky also testified that Earl was in good health before she left the home the evening of his death.

Mrs. Globensky testified at trial against her husband. She had been in custody as a material witness from June 17, the date of her arrest, until the time of trial. Shortly after her arrest, she had given a statement to the district attorney's office as to what had happened. She was subsequently granted immunity previous to her testimony before the grand jury. Prior to being granted immunity, Mrs. Globensky had written to her mother relaying the relevant facts to which she ultimately testified before the grand jury and at trial. At trial, Mrs. Globensky stated that she had gone to work one night in July of 1976. She stated that she was concerned with appellant's drinking and described him as being in a "bad mood" on her departure. She had fed and bathed the twin girls and Earl and had put them to bed. Mrs. Globensky left the house around nine o'clock p.m. and returned the following morning at about six o'clock. When she arrived home, she checked on the children, finding the girls were fine. She found Earl lying in his bed. He appeared pale and blood was coming out of his nose and covered the pillow. Mrs. Globensky stated that he was cold when she touched him. Immediately thereafter, she woke appellant up by yanking him off the sofa. Appellant was told that Earl was dead and appellant replied, "Couldn't be." Appellant then went into the other room and got a cigarette and a drink. Sometime later he

went into the room where the boy was and then told Mrs. Globensky to get the girls out of the house. Appellant subsequently informed her that he had buried Earl in the basement. Shortly before the couple moved to Seattle, which was a month after the incident, appellant told Mrs. Globensky that he had gone down to the basement to see that everything was covered, and that he put a rock on the head of the body.

Appellant admitted that he was at home with the children when his wife was working on the night before she discovered the body. He said that he immediately went into the room and did not have a drink nor a cigarette. Appellant stated he asked Mrs. Globensky what had happened and said she responded, "I couldn't have hit him that hard." Appellant also said that they then decided that they would bury the boy in the basement.[1] This was done by appellant that night after he came home from work. Appellant testified that shortly before they moved, the couple had gone down to the basement and tried to remove the body to take it with them. At that time, the skull had rolled off. The body was too decayed and was left buried. The skull was buried in another location. Appellant admitted that he gave a false destination to the trailer rental company and fabricated a story to explain the absence of Earl.[2]

Others testified that appellant had recently told the boy that he would "punch his lights out," and that appellant was seen hitting the boy so hard it threw him back on the bed. Mrs. Globensky also stated that appellant would punish the boy by forcing him to lay in a wet bed.

A psychiatrist, Dr. L. B. Gerow, testified that he found Mrs. Globensky to be a very passive person, with an easily dominated personality. Dr. Gerow further testified as to her concern for the health and welfare of her children and that in his opinion he would be surprised if she would physically abuse her children. Other witnesses corroborated this expert testimony.

*1. Accomplice Testimony.*

While Mrs. Globensky was being held on murder charges, she gave a statement of her version of the facts to the district attorney. An agreement had been made with her attorney that the statement would not be used against her. After the statement was given, with the district attorney being satisfied respecting Mrs. Globensky's apparent lack of culpability regarding the homicide, the charges against Mrs. Globensky

[1]Appellant testified that the decision was made to bury the boy in the basement because appellant did not want to "snitch my own wife off" to the police.

[2]Appellant claimed that both he and Mrs. Globensky agreed to tell people that the boy had leukemia and went to live with his grandmother.

were dismissed. Mrs. Globensky was then told she would be granted immunity if she would testify before the grand jury and at trial. At trial, the prosecution introduced a letter Mrs. Globensky had written to her mother as evidence of a prior consistent statement before the immunity was granted.

Our statutes provide that a conviction may not be had on the testimony of an accomplice unless it is corroborated by other evidence which, by itself, tends to connect the defendant with the commission of the offense. NRS 175.291(1). An accomplice is defined as "one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." NRS 175.291(2).

In the instant case, the prosecution decided not to charge Mrs. Globensky after she had given her statement. Here, not only did Mrs. Globensky's statements initially given the authorities precede any offer of concessions, but, indeed, the evidence shows without serious contradiction that she was in fact *not* ". . . one who is liable to prosecution, for the identical offense charged . . . ." It necessarily follows that NRS 175.291(1) has no application. Prosecutors have wide discretion in the performance of their duties, *see* Cairns v. Sheriff, 89 Nev. 113, 508 P.2d 1015 (1973); Hollander v. Warden, 86 Nev. 369, 468 P.2d 990 (1970), and we find no abuse of that discretion in this instance.

Even assuming the evidence in the record showing that Mrs. Globensky was a corrupt participant, was sufficiently conflicting, it is for the jury to decide, under proper instructions, whether a witness was an accomplice. Pineda v. Sheriff, 89 Nev. 426, 426–27, 514 P.2d 651, 651 (1973); Austin v. State, 87 Nev. 578, 587, 491 P.2d 724, 730 (1971); Tellis v. State, 84 Nev. 587, 589 n.1, 445 P.2d 938, 940 n.1 (1968); State v. Verganadis, 50 Nev. 1, 7, 248 P. 900, 902 (1926). Even if an instruction had been appropriate, State v. Verganadis, 50 Nev. at 7, 248 P.2d at 902, none was requested or given. It is incumbent upon the defendant to request such an instruction. Gebert v. State, 85 Nev. 331, 333–34, 454 P.2d 897, 898–99 (1969). Appellate consideration is precluded unless the instruction was so necessary that the failure to give it was "patently prejudicial." *Id*. Moreover, the requirement of corroboration of accomplice testimony is a creature of statute and is not of constitutional dimension. *Id*.

Additionally, even without Mrs. Globensky's testimony there was sufficient inculpatory evidence. Thus, had there been a proper issue as to whether Mrs. Globensky was an accomplice, there was sufficient corroborative evidence showing appellant's responsibility. Witnesses testified that appellant had recently unreasonably struck and threatened the victim. Appellant himself testified that he was at home alone with the children on the night before the body was discovered. He said Mrs. Globensky had just come home from work and when appellant touched the boy, he was "cold and stiff." Appellant also admitted to burying the body. It was further shown that appellant may have "resented" the boy, particularly as a financial liability. The facts which the jury could infer from the evidence were sufficient to connect appellant with the crime. *See* LaPena v. State, 92 Nev. 1, 544 P.2d 1187 (1976); Eckert v. State, 91 Nev. 183, 533 P.2d 468 (1975); Austin v. State, 87 Nev. 578, 491 P.2d 724 (1971).

*2. Due Process.*

Appellant relies on Franklin v. State, 94 Nev. 220, 577 P.2d 860 (1978), in support of his claim that he was denied a fair trial. That reliance is misplaced. In *Franklin,* the fruits of the *plea bargain* were withheld from accomplice Swift until his testimony was received. Here, Mrs. Globensky made a statement before any promise of immunity was made. After the statement, the district attorney dropped the pending charges and then granted Mrs. Globensky immunity for her testimony. Mrs. Globensky, unlike the *accomplice* in *Franklin,* was not placed under a compulsion to testify in a particular manner. The state also introduced the letter written by Mrs. Globensky prior to the grant of immunity which stated in essence the facts to which she later testified.

Appellant next contends that the benefits of the bargain were withheld since Mrs. Globensky was held on a material witness bond until trial. In effect, appellant argues, this placed Mrs. Globensky under such pressure that, with her submissive personality, she was forced to testify against her husband.

Appellant does not show that the immunity itself was withheld until after trial. *Cf.* Franklin v. State, 94 Nev. at 224–25, 577 P.2d at 862–63 (benefits of bargain withheld until after the witness had testified). Additionally, our statutes authorized courts to set bail for material witnesses and allow for these witnesses to be taken into custody if bail is not posted. NRS 178.494.

*3. Cause of Death.*

The indictment alleged that appellant wilfully and unlawfully killed Earl Sledge "by inflicting upon said child physical beatings and mortal blows to the head . . . ." There is no allegation that the death was specifically caused by a blunt instrument although Dr. Sohn testified this was what likely occurred. The prosecution is given latitude in proving the method or methods used in committing a murder. *See* NRS 173.075(2). *Cf.* Simpson v. District Court, 88 Nev. 654, 503 P.2d 1225 (1972) (indictment insufficient to afford defendant notice of charges as *no* means of murder specified). Even assuming there is merit to this claim, the challenge to the indictment is too late. Simpson v. District Court, 88 Nev. at 661, 503 P.2d at 1230.

The remaining assignments of error are without merit. We affirm the judgment of conviction.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., concurring:
I concur in the result.