SHERIFF, CLARK COUNTY, NEVADA, APPELLANT, *v.* JOSEPH EDWARD SPAGNOLA AND JACKIE FAIR, RESPONDENTS.

No. 15499

September 24, 1985                                706 P.2d 840

*Brian McKay,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *William P. Henry* and *James Tufteland,* Deputy District Attorneys, Clark County, for Appellant.

*Johns & Johns,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Respondents Spagnola and Fair were each charged by a grand

jury indictment with fifty-seven counts of obtaining money under false pretenses. The district court granted respondents' pretrial petition for a writ of habeas corpus and dismissed all pending charges against them. The state then appealed. For the reasons set forth below, we affirm the district court's decision to dismiss all charges against respondent Fair, but we reverse the district court's order as to respondent Spagnola on counts one to twenty-three and affirm on the remaining counts.

At the grand jury hearing, the evidence established that respondent Joseph Spagnola was the owner of Nevada Speech and Hearing Consultants, a speech therapy clinic in Las Vegas, and that respondent Jackie Fair was the clinic's bookkeeper. Nevada Speech and Hearing employed several therapists and contracted with numerous nursing homes and hospitals in the Las Vegas area to provide their patients with speech and hearing therapy. Many of these patients were recipients of Medicaid. In these cases, Nevada Speech and Hearing billed Medicaid, rather than the patients themselves, for its services. All fifty-seven counts in the indictment allege that Spagnola and Fair overbilled Medicaid in a fraudulent manner in connection with services rendered by the clinic's therapists to several patients.

In their petition for a writ of habeas corpus, respondents contended primarily that the evidence presented to the grand jury was not sufficient to establish probable cause that they had committed the crimes in question, and that the indictment failed to provide them with adequate notice of the nature of the charges. In granting respondents' habeas petition, the district court agreed with respondents that the evidence presented to the grand jury was not sufficient to establish probable cause and that the indictment was "inartfully" drawn and "very conclusionary."

Upon appeal from an order of the district court granting pretrial habeas corpus relief to a criminal defendant based on a lack of probable cause, this court's review is limited to the question of whether the district court committed "substantial error" in granting relief. *See* Sheriff v. Provenza, 97 Nev. 346, 630 P.2d 265 (1981).

Our review of the record leads us to conclude that the charges against respondent Fair were properly dismissed. As indicated above, all counts in the indictment allege that Spagnola and Fair overbilled Medicaid in a fraudulent manner in connection with services rendered by the clinic's therapists to several Medicaid recipients. The evidence presented at the grand jury hearing, however, pertained to billings submitted by the clinic itself, and not by Spagnola and Fair as individuals. Further, the evidence

presented to the grand jury indicated only that respondent Fair was the clinic's bookkeeper. The state presented no evidence that Ms. Fair had any special control over the manner in which the clinic billed Medicaid or that she knowingly assisted the clinic's owner in committing any allegedly fraudulent acts. Accordingly, the district court correctly concluded that sufficient evidence had not been presented to hold Ms. Fair for trial on any of the allegations contained in the indictment. We therefore affirm the district court's order granting habeas relief as to all counts alleged in the indictment against respondent Fair.

Nevertheless, because the evidence clearly established that Spagnola was the owner of the clinic at the time of the allegedly fraudulent billings, we have no difficulty concluding that Spagnola may be bound over for trial for any instances of fraudulent overbillings submitted by his clinic, which the state has established probable cause to believe occurred. The only remaining question is whether the district court committed substantial error by concluding that the evidence presented to the grand jury was insufficient to establish probable cause that Spagnola did obtain money under false pretenses by fraudulently overbilling Medicaid. We conclude that the district court committed substantial error by dismissing counts one through twenty-three against Spagnola, but we affirm its decision to dismiss the remaining thirty-four counts.

The first twenty-three counts in the indictment allege that Spagnola's clinic fraudulently billed Medicaid for "duplicate travel expenses" in numerous instances. At the grand jury hearing, Jeannette Supera, a Medicaid investigator employed by the Nevada State Welfare Department, was the state's primary witness concerning the proper method of billing Medicaid for travel expenses. Ms. Supera testified that billing for travel expenses is governed by the "Nevada Relative Value Scale."[1] The scale specifically provides that a therapist can bill Medicaid for one unit of travel time for every ten miles driven outside the therapist's "usual practice location" and for 0.1 value units for every

---

[1] The Nevada Relative Value Scale is used by Medicaid and its service providers to determine proper billing amounts in other areas as well. The scale lists various forms of speech therapy treatments and miscellaneous expenses incurred in providing such treatments. The scale then attributes a "value" to each type of therapy or expense. According to Jeanette Supera's testimony, each unit of value is worth $10.73. Depending on the type of treatment performed, the value assigned to a particular treatment ranges from one to seven units. In certain instances the scale delineates a specific time period in which the treatment is to take place and permits the therapist to bill more than one value if the therapy extends over the set time period; in other instances it provides for billing on a "per visit" basis, and in still other instances it is silent.

one mile driven over twenty miles. Ms. Supera testified that when a therapist travels to a particular hospital or nursing home, the therapist is permitted to bill for only one "unit" of travel time under the Nevada Relative Value Scale for therapy, regardless of the number of patients treated there.

Supera testified, however, that in twenty-three instances, Nevada Speech and Hearing had billed for more than one unit of travel time for therapists' trips made outside the therapists' usual practice location. In each of these instances, the therapist had seen more than one patient on a particular visit, and Nevada Speech and Hearing had submitted billings for one unit of travel time for each patient seen during the visit.

In the district court proceedings below, respondents argued that the scale was ambiguous and failed to provide adequate notice that only one travel unit could be billed per therapist trip, despite the number of patients treated during the trip. According to respondents, a therapist should be compensated for travel time for each patient visited and treated on a particular trip, since a therapist deserves to be compensated for the additional time spent away from his or her office that is occasioned by visiting and treating more than one patient on a particular trip. Respondents asserted that the Nevada Relative Value Scale can be reasonably interpreted to provide for travel time billing to compensate a therapist in this manner. We conclude, however, that the scale is not as ambiguous in this regard as respondents asserted and that the question of whether Spagnola acted with a criminal intent in choosing to interpret the scale in this manner is a question of fact for the jury.

The scale clearly states that a clinic may bill for travel time based on the number of *miles* traveled by a therapist; the scale thereby makes it clear that the therapist is to be compensated only for the time and expenses incurred in traveling to a particular clinic, and not for time spent away from the office in actually treating patients. Instead, as discussed below, the scale provides for separate billing procedures to compensate the therapist for time actually spent treating a patient. *See also* note 1, *supra*. Further, we note that Ms. Supera conducted a computer check of all available Medicaid records and was able to ascertain that Nevada Speech and Hearing was the only therapy clinic in Nevada which billed for more than one unit of travel time to a particular hospital or nursing home.

In light of the above, we conclude that the state adequately established probable cause to believe that Spagnola was acting with a criminal intent to obtain money under false pretenses by billing Medicaid in this manner. Accordingly, we hold that the district court committed "substantial error" by concluding that

probable cause was not established to hold Spagnola for trial on counts one through twenty-three in the indictment.

We agree, however, with the district court's decision to grant the habeas petition regarding the remaining thirty-four charges. Counts twenty-four and twenty-five allege that Spagnola's clinic fraudulently overbilled for therapy services conducted on two patients who were not in need of those services. The evidence presented at the grand jury hearing indicated that the clinic's therapists performed various forms of therapy on these two patients on a trial basis only, to determine the patients' needs. Although it was later determined that these two patients were not in need of therapy, there was no evidence presented establishing that Spagnola acted with a criminal intent when he permitted his therapists to conduct the therapy on a limited trial basis. Accordingly, we conclude that the district court did not commit substantial error in dismissing these two charges.

Counts thirty-one and thirty-two allege that Spagnola's clinic billed for services that were simply never performed on a patient. In support of these two charges, the state presented evidence that the clinic's therapist had failed to enter a notation on the patient's medical records indicating that therapy had been performed as is the apparent practice in the field. Without more evidence, however, the district court could have reasonably concluded that the clinic's therapist simply forgot to enter a notation on these two occasions. We therefore conclude that the district court did not commit substantial error by granting Spagnola habeas relief with regard to these two charges.

The remaining thirty counts in the indictment allege that Spagnola overbilled for "aphasia/voice" therapy services rendered to Medicaid patients. Once again, the state's case in this regard centers on its interpretation of the Nevada Relative Value Scale.

As indicated above, the scale in some instances provides that billing shall be based upon the amount of time spent with a patient, and in other instances the scale is silent regarding time. *See* note 1, *supra*. Thus, for basic speech or language therapy, the scale assigns an initial unit of value for the first thirty minutes spent with a patient, and assigns a second billing unit of less value for each additional fifteen minutes spent with a patient. For "aphasia/voice" therapy, however, the scale provides for only one billing unit of value, and fails to indicate whether the unit is limited to a particular time period, or whether only one unit is to be billed no matter how long a therapy session with a patient lasts.

At the grand jury hearing, Jeanette Supera testified that she believed the scale only permitted a therapist to bill one unit regardless of how long the therapist remained with the patient. On the other hand, several therapists who were previously employed by Nevada Speech and Hearing testified that they understood a unit to constitute a 20-30 minute period of time. Accordingly, when the therapists submitted their billings, they would charge for more than one unit of value if they had spent at least two twenty to thirty minute blocks of time with their patients.

This latter interpretation of the scale is not an unreasonable one and is not contradicted by anything contained in the scale itself. Moreover, the state failed to establish that Medicaid's interpretation of the scale had ever been communicated to Spagnola or the clinic's therapists, or that Spagnola knew that his therapists were billing according to an improper interpretation of the scale. Accordingly, we cannot conclude that the district court committed substantial error by finding that the evidence presented to the grand jury was insufficient to establish probable cause as to the allegations of overbilling contained in the thirty counts in question.

Finally, we turn to the question of whether the allegations contained in the indictment were sufficient to apprise Spagnola of the nature of the charges against him. Because we have concluded that the district court did not commit substantial error by dismissing counts twenty-four through fifty-seven, our review of the sufficiency of the indictment will be limited to counts one through twenty-three.

In Simpson v. District Court, 88 Nev. 654, 659, 503 P.2d 1225, 1229 (1972), this court held that a charging document should provide "a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended," quoting State v. McMahan, 65 P.2d 156, 159-60 (Idaho 1937). The charging document should also contain, when possible, a description of the means by which the defendant committed the offense. See NRS 173.075(2). Finally, although we have held that the state is not required to allege the precise date of an offense in a charging document where the date is not an essential element of the offense, we have nevertheless indicated that the defendant should be apprised of the general time period in which the offense occurred to enable him to adequately defend against the charge. See Cunningham v. State, 100 Nev. 396, 683 P.2d 500 (1984).

Counts one through twenty-three in the indictment alleged that

Spagnola's clinic, as a provider of medical care and as a contractor with the State of Nevada, obtained money under false pretenses from the State of Nevada with the intent to defraud, by billing and obtaining payment in a specific amount by means of submitting duplicate travel expense claims with regard to certain specified patients. Additionally, each count sets forth the month in which the overbilling is alleged to have occurred. While the indictment arguably could have been more specific concerning the dates on which the alleged overbilling occurred, we are confident that Spagnola will be able to ascertain these dates with little effort and will therefore be able to prepare adequately his defense to these charges. *See generally* Cunningham v. State, *supra.* In sum, we believe that the indictment provides Spagnola with a sufficient statement of the acts constituting the alleged offenses and provides him with adequate notice of the theory of guilt the state will rely on at his trial. We therefore hold that the district court erred by concluding that the indictment was insufficient.[2]

Accordingly, with regard to respondent Spagnola's case, we hereby reverse and remand this matter to the district court for further proceedings consistent with this opinion. We affirm the order of the district court in all other respects.

---

[2]We note that Spagnola also raised several additional issues in a motion to dismiss in the district court at the same approximate time that he filed the petition for a writ of habeas corpus under consideration herein. However, the district court specifically declined to rule on these contentions in light of its decision to grant relief on the above two grounds. Accordingly, we believe it would be premature for this court to consider these contentions at this time, and we therefore decline to do so.