## STATE v. JOHN AZZONE.

135 N. W. (2d) 488.

May 14, 1965—No. 38,948.

*Joseph Robbie* and *Peter Lindberg,* for appellant.

*Robert W. Mattson,* Attorney General, *William B. Randall,* County Attorney, and *Phyllis Jones,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from an order of the district court denying defendant's motion for a new trial.

On December 8, 1959, John Azzone, Alex DeGoode, and Rocco Lupino were indicted jointly for the crime of kidnapping Anthony DeVito on September 28, 1953. Lupino was tried first and found guilty. Upon appeal to this court the conviction was affirmed. State v. Lupino, 268 Minn. 344, 129 N. W. (2d) 294,[1] certiorari denied, 379 U. S. 978, 85 S. Ct. 681, 13 L. ed. (2d) 569. After the conviction of Lupino but before his appeal, Azzone was tried separately and found guilty by a jury verdict returned May 7, 1960. Two days later he was sentenced to Stillwater penitentiary for confinement "accord-

---

[1] The testimony of DeGoode was substantially the same in both trials and is summarized in State v. Lupino, 268 Minn. 344, 129 N. W. (2d) 294, certiorari denied, 379 U. S. 978, 85 S. Ct. 681, 13 L. ed. (2d) 569.

ing to law." After 2 years, on August 1, 1962, he moved for a new trial, which was denied by an order dated November 1, 1962, from which defendant appeals.

In this court defendant contends:

■ He was denied due process of law under the Fourteenth Amendment of the United States Constitution and art. 1, § 7, of the Minnesota Constitution because (1) the order of the trial court denying his motion for a new trial based on newly discovered evidence was not justified; (2) the trial court erroneously decided that the motion for a new trial was not timely; (3) the admission of evidence of other and separate crimes was prejudicially erroneous; and (4) inflammatory remarks and statements made by the county attorney in his argument to the jury improperly influenced the verdict.

■ The evidence fails to sustain the verdict since the testimony of an accomplice (Alex DeGoode) was not adequately corroborated.

■ The evidence fails to establish that the crime of kidnapping was in fact committed by defendant.

■ The sentence of the trial court was defective and failed to specify whether or not it was to run concurrently with a Federal sentence being served by Azzone at the time the sentence in this state criminal proceedings was imposed.

■ The evidence establishes that prosecution was barred by the statute of limitations.

■ Defendant was denied a fair trial because of prejudicial publicity appearing in news media.

## I.
### Claimed Violations of Constitutional Rights

(1) The trial court was justified in refusing to grant a new trial upon the grounds of "newly discovered evidence" consisting of certain statements made by the county attorney in open court on June 8, 1960, when the indictment against Alex DeGoode was dismissed, which statements included these comments:

"This matter presently before the Court was a companion matter to the Lupino case which has already been tried, and the Azzone case

which has already been tried. These cases arose after conviction of Azzone and Lupino in a federal trial for unlawful flight, and after sentence of this defendant who had pled guilty to the same charge.

"Now, in the federal trial this defendant had pled guilty, and after he had been sentenced I asked if he was willing to waive his constitutional rights and testify before a Ramsey County District Grand Jury. He indicated he would. After his testimony and other evidence the Grand Jury indicted this defendant, together with Lupino and Azzone, for Kidnapping.

\* \* \* \* \*

"\* \* \* [But] in this court Mr. DeGoode pled not guilty.

\* \* \* \* \*

"Separating the trials, as each of these defendants has chosen to do, leaves me with a completely different picture. I'm now faced with the trial of DeGoode alone, not in concert with Lupino and not in concert with Azzone, \* \* \* the State is unaware of a single [witness] who will testify that this defendant was even in the State of Minnesota, to say nothing of having taken part in the crime for which he is charged.

"\* \* \* we are unable to prove that the crime of kidnapping occurred and that this defendant participated in it.

"The Court: You mean by that without his own testimony.

"Mr. Randall: Without his own testimony and with his testimony we are unable to establish corroboration as to his participation in it, because we have no witnesses who identify Mr. DeGoode as being anywhere in Minnesota at that time.

"Now, immediately following the completion of the Azzone trial, which was the second of the two, I talked to the attorney for Lupino and I talked to the attorney for Azzone. They talked to their clients. Thereafter, I talked personally to Lupino and I talked personally to Azzone. I pointed out to them in as clear words as I could use that we needed additional evidence in order to corroborate the confession and the sworn testimony which DeGoode had given. Neither Lupino or Azzone were able to give me the names of a single witness; nor were they willing to indicate their willingness to appear as a witness themselves."

Defendant contends that these statements by the county attorney made with respect to the state's case against DeGoode constitute judicial admissions which establish as a fact that DeGoode was not in Minnesota on September 29, 1953, and this being so, convictions based on his testimony should not be permitted to stand. The argument reflects a misunderstanding of the differences between problems of proof occurring under Minn. St. 634.03, which provides:

"A confession of the defendant shall not be sufficient to warrant his conviction without evidence that the offense charged has been committed; nor can it be given in evidence against him whether made in the course of judicial proceedings or to a private person, when made under the influence of fear produced by threats,"

and those occurring under § 634.04, which provides:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

One object of § 634.03 is to discourage invasions of the constitutional rights of accused persons to be free from undue pressure to confess exerted by law enforcement authorities.[2] The importance of this right and the measure of judicial concern for its protection is illustrated by the recent decision of the United States Supreme Court in Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. ed. (2d) 908, where it was held that criminal procedures followed in the State of New York which made possible jury reliance upon a credible but nonvoluntary confession deprived the defendant of his liberty without due process of law. The object of § 634.04 is to provide a check upon the credibility of testimony of a person who, having been admittedly involved in criminal conduct, might be disposed to shift or diffuse responsibility in order to curry the favor of law enforcement officials. The confession to

---

[2]Even when confession is made to private persons and even if entirely voluntary, the statute applies. See, State v. Laliyer, 4 Minn. 277 (368); State v. New, 22 Minn. 76.

which reference is made in § 634.03, as a practical matter, is one obtained extrajudicially. There is no opportunity for the jury to observe firsthand the process which produces it. On the other hand, the testimony of an accomplice is given in open court and is subject to cross-examination by the defendant's attorney. Verity is thus safeguarded in a measure. These different reasons for §§ 634.03 and 634.04 in themselves suggest that the quantum of proof required to constitute "evidence that the offense charged has been committed" within the meaning of § 634.03[3] is different than that required to constitute "such other evidence as tends to convict the defendant of the commission of the offense" within the meaning of § 634.04.[4]

In evaluating the comments made by the county attorney, the question is not whether DeGoode's written confession made out of court coupled with the recitation of events given by him in open court during the Lupino and Azzone trials would have supported a conviction. The significant thing is that in the opinion of the county attorney at the time these statements were made the written confession of DeGoode could not be buttressed by his testimony in the Lupino and Azzone trials in order to meet the requirements of § 634.03. Whether that judgment was correct is not the issue before us. The problem now is whether the statement of the county attorney as applied to the problems of proof as against DeGoode represents an official acknowledgment that there was inadequate corroborating evidence of DeGoode's testimony in the cases against Lupino and Azzone.

The problems of proof were entirely different in the Azzone and Lupino trials than they would be in the DeGoode case. The evidence needed to prove that the offense charged had in fact been committed was provided in each of the separately tried cases by DeGoode. He acknowledged participation and testified in detail concerning the acts of Azzone and Lupino which constituted the crime.

The convictions in the Lupino and Azzone cases did not rest upon

---

[3]See, 23 C. J. S., Criminal Law, § 839(d).

[4]For a discussion of the purpose and scope of § 634.03, see State v. Nordstrom, 146 Minn. 136, 178 N. W. 164. Compare with respect to § 634.04, State v. Mathiasen, 267 Minn. 393, 127 N. W. (2d) 534.

172

confessions at all. Each pled not guilty. Lupino, taking the witness stand, claimed that he was at home throughout the night when the crime allegedly occurred. Azzone at his trial asserted his constitutional right to remain silent. In the absence of a confession,[5] other corroborating evidence was needed to meet the requirements of § 634.04, and in the Lupino decision we found the corroboration adequate as to him.

The problem in the case against DeGoode was quite different. Although he had given a written confession to the crime and had testified with respect to the details of it in the cases against Lupino and Azzone, he pleaded not guilty as to himself and refused to repeat the confession where his own liberty was at stake. The state was left with no testimony to be corroborated (except for the confession made previously),[6] and this because the men who, according to DeGoode, participated with him in the crime were either unable or unwilling to testify that a kidnapping had in fact been committed by anyone. To contend that an acknowledgment of these facts by the county attorney represents a judicial admission that the crime was not committed is to confuse the existence of a fact with the proof needed to establish it in a specific case.

(2)  Defendant was not denied his constitutional right to appellate review of the proceedings resulting in his conviction (Douglas v. California, 372 U. S. 353, 83 S. Ct. 814, 9 L. ed. [2d] 811), by the fact that the trial court considered his motion for a new trial to be untimely.[7] Where claims of constitutional infringement are involved, this court (accommodating to such recent United States Supreme Court decisions as Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822, 9 L. ed. [2d] 837; Townsend v. Sain, 372 U. S. 293, 83 S. Ct. 745, 9 L. ed. [2d]

[5]A confession by the accused is adequate corroboration of the testimony of an accomplice. State v. Huebsch, 146 Minn. 34, 177 N. W. 779.

[6]Whether a nonjudicial confession confirmed by testimony in open court meets the requirements of § 634.04 is a question to which our decisions do not give a certain answer.

[7]The motion for a new trial was not timely. § 632.01; State v. Roggenbuck, 263 Minn. 396, 116 N. W. (2d) 562; cf. State v. Lund, 174 Minn. 194, 218 N. W. 887.

770; and Sanders v. United States, 373 U. S. 1, 83 S. Ct. 1068, 10 L. ed. [2d] 148) will disregard time limitations when this can be done without prejudice to the public interest in orderly criminal procedure. We are reviewing all of the claims of the defendant in this case and, as a consequence, the determination of the trial court to the effect that defendant's motion for a new trial was belated will not bar review of the claims of constitutional infringement. Thus, prejudice is absent.

(3) There was evidence at this trial, as in the Lupino case, of other and separate crimes which include (a) joint participation by Azzone, Lupino, DeGoode, DeVito, and Mussehl in a robbery at Aynor, South Carolina, (b) joint participation of Azzone, Lupino, DeGoode, and Sam Cimin in a robbery in Minneapolis on September 26, 1953, and (c) an earlier robbery by these four of a Minneapolis gambler. As to the first and second of these separated and prior crimes, we have here the same problem as we did in the Lupino case. There we held the facts of the Aynor robbery to be admissible because the events related established defendant's motive. The evidence of the September 26, 1953, robbery was held admissible because "the same persons participated in it as those who allegedly participated in the kidnaping of September 28, 1953 * * * and because it was done at a time and in a way having evidentiary significance in this case."

We did say that evidence as to the third robbery "would not have been admissible ordinarily." The record in the Azzone trial discloses no waiver of the objection. Nevertheless, in our opinion, any error which may have occurred in permitting brief reference to this incident was without prejudice. Unquestionably, reference to the commission of prior crimes by a defendant influences jurors. But, in this case, the evidence as to the Aynor, South Carolina, robbery and the September 26, 1953, O'Hara robbery having been properly admitted, the reference to the robbery of the Minneapolis gambler by DeGoode, Lupino, Azzone, and Cimin would have slight additional impact. It is also to be remembered that all of this testimony came from DeGoode. If the jury had disbelieved him, his recitation of these prior occurrences would have no effect. If the jurors did believe DeGoode's ac-

count of DeVito's destruction (and the verdict of guilty returned against the defendant indicates that they did), the reference to the robbery of the gambler would have about the same effect as a bucket of water on a lake level. We note too the meticulous care with which the trial judge in his instructions emphasized to the jurors the importance of determining whether defendant was guilty of the crime charged without regard to whether he may or may not have been guilty of some other and different crime. These considerations combine to convince us that there was no possibility of prejudice in the admission of this testimony under the circumstances of the case. See, State v. Biehoffer, 269 Minn. 35, 129 N. W. (2d) 918.

(4) We have read the argument of the county attorney to the jury in detail and we are satisfied that the discussion of the evidence was within permissible limits.

## II.

### Corroboration

The record in this case being substantially the same as that reviewed by us in the Lupino case, defendant argues that the corroboration of DeGoode's testimony as against Lupino was stronger than that which is to be found in this record because Lupino was tied to the kidnapping by nonaccomplice testimony to the effect that on the morning of Monday, September 28, 1953, he was observed to be in possession of a 1950 Dodge automobile owned by Anthony Petrangelo, who had been using Lupino's brightly colored car on the weekend of September 26-27. We noted that DeVito had been last seen shortly before leaving Heinie's Bar at 1 a. m. on the morning of September 28, 1953, and that he was then standing beside this same Dodge automobile.

It is true that there is no nonaccomplice testimony connecting Azzone to the Dodge. There is, however, other testimony present in this case connecting the defendant to the offense which brings the corroboration within the minimum requirements of § 634.04.

Here, as in the Lupino case, we find corroboration in nonaccomplice testimony from which the jury could find that (a) DeVito did in

fact confess to the Aynor robbery and give a written statement to the South Carolina police implicating Lupino, Azzone, and DeGoode; (b) Lupino and Azzone associated together in efforts to get assurance from Mussehl that he would disavow the written confession which he had given implicating them in the Aynor robbery; (c) DeVito did in fact disappear on September 28, 1953, and has not been seen again; and (d) Lupino and Azzone together boarded an airplane at Rochester, Minnesota, on September 29, 1953, and flew to South Carolina.

In addition, this record includes testimony from a witness who was living with Azzone in Minneapolis at the time of the alleged kidnapping. She related that on the night of September 27, 1953, they attended a movie. She went to bed about 11:30 or midnight. Then the phone rang. Azzone left. Later, she testified these events occurred:

"Q    And approximately what time did John return?

"A    * * * he woke me and told me to remember always that he was there that night all night.

"Q    He told you to remember always that he was there that night all night?

"A    Ya.

"Q    What was he wearing at the time he woke you?

"A    He had taken his clothes off.

"Q    Did you see his clothes?

"A    Then I went out and into the front room and into the kitchen and got coffee. Of course it was light enough to see these roll of dirty clothes.

"Q    How did the clothes appear? You said they were dirty?

"A    There was mud and clay on the rug and on the clothes.

*    *    *    *    *

"Q    Do you know what happened to the clothes?

"A    No.

"Q    Did you make any offer to John to do anything with the clothing?

"A    Wash, I suppose. I would throw them in the wash, or something, I don't know, but he said no, he would take care of them. I

didn't even touch them. I was afraid. I was scared. He woke me. He was nervous. I was nervous.

"Q And you indicate that it was now sufficiently light to see without illumination. Was this from outside, you mean?

\* \* \* \* \*

"THE WITNESS: Well, it was about 5:30 in the morning, to be exact. It is like something that stands out in your mind. It was around 5:30, I remember that."

The corroborative force of this recitation comes from its relation to that part of DeGoode's testimony where (a) he inferentially fixed the time of the kidnapping and murder as having been between 1 a. m. and 5 a. m. on September 28, 1953, and (b) he described Azzone's participation in digging DeVito's grave at a site which was wet and muddy.

It is true that her testimony was shaken when it was made to appear that a collateral fact to which she related the date of these events and conversations occurred on a different night than that of September 27-28, 1953. But these circumstances went to the credibility of the witness and not to the admissibility of her corroborating testimony.

Her version was strengthened in some degree by this testimony of one Thomas P. Tierney, Jr., who occupied a cell in the Ramsey County jail with John Azzone before the district court trial which resulted in his conviction:

"Q. (By Mr. Randall) Mr. Tierney, while you were in prison—excuse me—while you were in the county jail with John Azzone, did you have any conversation concerning a girl who was to be a witness?

"A. Yes, I did.

"Q. And did he indicate who the girl was?

"A. The girl he was living with at the time.

\* \* \* \* \*

"Q. (By Mr. Randall) What conversation did you have with this defendant concerning the girl?

"A. We discussed what she would have to say if she was called as a witness.

"Q. What did he say she would have to say?

"A. His clothes were muddy and wet when he came in that night.

"Q. Did he indicate where he came in that night?

"A. To the apartment where he was living with her."

## III.

### Corpus Delicti

Defendant's claim that the corpus delicti was not proved beyond a reasonable doubt is without merit. The corpus delicti can be proved by the testimony of a witness to the criminal act. 23 C. J. S., Criminal Law, § 916(5). If the witness is an accomplice whose testimony is adequately corroborated, the corpus delicti is established. State v. Demopoulos, 169 Minn. 205, 210 N. W. 883.

## IV.

### Sentence

A transcript of the proceedings before the Honorable Clayton Parks which resulted in Azzone's sentence pronounced May 9, 1960, includes the following:

"THE COURT: You, John Azzone, having pleaded not guilty to an indictment filed against you by the Grand Jury of Ramsey County on the 8th day of December, 1959, charging you with having on the 28th day of September, 1953, committed acts constituting the crime of Kidnapping in this state, and you having been found guilty of the charge made in the indictment by a Grand Jury of this county, it is hereby adjudged that you are guilty of said offense, and it is the sentence of the law and the judgment of the Court that you be taken to Stillwater Penitentiary located at Bayport, Minnesota, and there confined according to law, until hence released.[8]

---

[8]Minn. St. 1957, § 619.34, then in effect, provides: "Every person who shall wilfully:

"(1) Seize, confine, or inveigle another, with intent to cause him, with-

"MR. RYAN: If the Court please, the Court has heard the testimony of the witnesses and has received the verdict of the jury, and at least for the present, of course, the verdict has determined the guilt or innocence of this defendant. However, it occurs to me that the circumstances are such, the defendant has no past record beyond this short period of time here involved in 1953, that there might be room for the Court to consider seriously the possibilities of a limitation of sentence in this matter. I realize that the jury has found the facts as testified to by DeGoode, apparently, to have been true—whatever doubts I or anyone else may have—and in that connection it was his claim that Anthony DeVito was killed on that night. This defendant, however, is here charged with Kidnapping, not with Murder. The sentence imposed, for a man of his age, amounts to practically a life sentence, and it seems to me that there is room here for the exercise of some leniency and some limitation upon the maximum period of sentence.

"THE COURT: The Court does not wish to comment upon what it believes to be the facts because the judge is not the judge of the facts. That is the province of the jury. They—the jury has found him guilty as charged in this indictment, and the Court does not—the Court feels that it would be an abuse of its discretionary power to do anything to the sentence which has just been imposed.

"MR. RYAN: One more request, if the Court please. As the Court certainly realizes from the testimony in the case, the defendant is now serving a five year sentence imposed by the Federal Court for the offense of Flight to Avoid Prosecution. Although the crime is different,

---

out authority of law, to be secretly confined or imprisoned within the state, or sent out of it, to be sold as a slave, or in any way held to service, or kept or detained against his will;

    \*    \*    \*    \*    \*

"(3) Abduct, entice, or, by force or fraud, unlawfully take or carry away another, at or from a place without the state, or procure, advise, aid, or abet such abduction, enticing, taking, or carrying away, and shall afterwards send, bring, or keep such person, or cause him to be kept or secreted, within this state—

"Shall be guilty of kidnapping and punished by imprisonment in the state prison for not more than 40 years."

that sentence arises from substantially the same state of facts, and the request is that the present sentence imposed be ordered to be served concurrently with the Federal sentence which the defendant is now serving. I do not think—it seems to me that that would be an appropriate act by this court. Otherwise he will serve, of course, because of the whole—the full sentence imposed by the Federal Court and will not at any time begin to get credit for the sentence presently imposed until he has concluded the Federal sentence.

"THE COURT: The Court does not say that John Azzone is guilty or not guilty. The jury has spoken. And if he is guilty as the evidence—in the manner in which the evidence indicated and upon which evidence he was found guilty by the jury, with as fair trial as a man ever had in this county, I believe—I tried to make it so—he would be entitled to no consideration whatsoever, and I cannot find my way clear to granting anything. That is all."

Defendant relies on In re Carey, 372 Mich. 378, 381, 126 N. W. (2d) 727, 729, where it was said:

"* * * [W]here a defendant has been sentenced in Federal court, and is subsequently sentenced in a State court or courts, sentence may not be imposed to commence at the completion or expiration of Federal sentence, in the absence of statutory authority."

This case is not authority in Minnesota because it is premised on earlier decisions of the Michigan Supreme Court diametrically opposed to the holding of this court in Mims v. State, 26 Minn. 498, 5 N. W. 374.

Even so, defendant may have grounds for seeking release from imprisonment when he has served the minimum period of time required under the sentence of the district court with credit given for time served in the Federal prison after the imposition of the state sentence.[9] The

---

[9]On the question of whether a state sentence runs concurrently with a Federal sentence, see Annotation, 18 A. L. R. (2d) 511. For a relevant interpretation of a statute like Minn. St. 1957, § 610.33 (applicable when the sentence here involved was imposed, but since repealed), see People v. Ruthazer, 17 Misc. (2d) 720, 183 N. Y. S. (2d) 765. For a statement of the common-law rule with respect to the interpretation of sentences, see

only problem now before us is resolved by holding as we have previously decided that the matter of sentence cannot be considered an error justifying a new trial, and the complaint with respect to it is premature. State ex rel. Adams v. Rigg, 252 Minn. 283, 89 N. W. (2d) 898; State ex rel. Flynn v. Rigg, 256 Minn. 304, 98 N. W. (2d) 79; State ex rel. Soward v. Rigg, 256 Minn. 140, 97 N. W. (2d) 468.

## V.

### Statute of Limitations

The claim of the defendant that the statute of limitations bars prosecution is answered by our opinion in State v. Lupino, *supra,* where it was held that a person who leaves the state and goes to another jurisdiction is not "an inhabitant of, or usually resident within that state" within the meaning of these words as used in § 628.26, during the period of his absence, even though confinement in jail prevents his return.

## VI.

### Publicity

Defendant's claims with respect to prejudicial publicity are the same here as the claims reviewed in State v. Lupino, *supra,* and we hold here, as we did there, that the defendant has failed to show that the pretrial and trial publicity so contaminated the proceedings as to make a trial consistent with "fundamental fairness" required by the due process clause of the Fourteenth Amendment impossible or that the publicity was of such a nature as to make it impossible to secure an impartial jury.

Affirmed.

---

State ex rel. Keyes v. Vasaly, 177 Minn. 338, 225 N. W. 154. The interpretation of sentences is now governed by § 609.15, subd. 1, of the Minnesota Criminal Code of 1963. Note also, 24 C. J. S., Criminal Law, § 1567(3), p. 427; Ex parte Sabongy, 18 N. J. Super. 334, 87 A. (2d) 59; In re De Luccia, 10 N. J. Super. 374, 76 A. (2d) 304.