GEORGE ALEXANDER BROWN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 9985

June 29, 1978 · · · · · · · · · · · · · · · · · · · · · · · · 580 P.2d 947

*Morgan D. Harris,* Clark County Public Defender, and *Herbert F. Ahlswede,* Deputy Public Defender, Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *George E. Holt,* District Attorney, and *H. Leon Simon,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

In 1976 the Las Vegas Metropolitan Police Department, in conjunction with the federal government, established an undercover fabricated "fencing" operation code-named "Operation Switch." The operation procedure consisted of undercover police officers introducing burglars and thieves to Switch as a fence for stolen goods. On September 2, 1976, officer Max Huggins and another undercover officer entered a bar and conversed with one another loudly enough to be overheard by others concerning the failure of a fictitious friend to appear. Appellant Brown approached the undercover officer and was eventually informed that the friend was to sell some stolen items to a fence in return for a small commission. Appellant

offered to sell the goods to the fence for them. The two undercover officers and Brown then went to the building where Operation Switch was being conducted. The officers gave Brown numerous credit cards and a shotgun to sell to the fence.

Approximately one week later, Brown returned alone and on his own accord to Switch to sell some recently stolen credit cards. This subsequent transaction provided the basis for the instant criminal proceeding. Brown was not charged with theft of the cards but rather with the sale of a credit card belonging to another. NRS 205.710.

During trial, the defense attempted to obtain the home address of undercover officer Max Huggins and the name of the other undercover officer. The trial court refused to permit disclosure of the other officer's identity, and after defense counsel had stated he had no offer of proof as to why the address of officer Huggins was necessary, the trial court refused to order production of this information, as well.

The defense proffered certain instructions on the theory of entrapment, but the trial court determined that defense unavailable and refused to give those instructions. Following jury verdict, judgment of conviction was entered and this appeal ensues.

The issues before us are whether the trial court erred in refusing (1) to order the disclosure of identity and home address of an undercover officer; (2) to instruct the jury regarding the law of entrapment; (3) to order disclosure of the home address of the undercover officer who testified; (4) an instruction offered by appellant regarding purchases or sales of credit cards belonging to another and in failing to permit defense counsel the opportunity to argue alleged ''outrageous police practices'' to the jury?

1. and 2. *Disclosure of undercover officer's identity; requested jury instruction on entrapment.*

Appellant Brown contends he was entrapped. Brown testified that when the two Operation Switch undercover officers approached him, he had no predisposition to commit any crime nor did he even know what was meant by a fence. In contrast, Officer Huggins testified that Brown admitted he was then stealing and fencing stolen goods and stated that Switch was the finest fencing operation he had ever seen. Incidental to his entrapment argument, Brown claims he is entitled to disclosure of the other undercover officer's identity. He claims that because of the discrepancy in trial testimony, the identity of the undercover officer, the only other party to the conversation, is necessary to afford appellant a fair trial.

Appellant analogizes the situation to that regarding the identity of an informant and cites Roviaro v. United States, 353 U.S. 53 (1957), and Miller v. State, 86 Nev. 503, 471 P.2d 213 (1970), as authority. These cases have no application to our factual setting. In *Roviaro,* the informant was actively present at the transaction for which the defendant was charged for the crime. Further, not only here was the undercover officer not an informant, but he was not a material witness to the crime with which appellant is charged. *Miller, supra.* The transaction for which appellant stands accused involved his own independent return to Operation Switch to fence stolen credit cards. The undercover officers had no involvement with this later incident which provoked Brown's arrest and subsequent conviction; Officer Huggins was available and testified; there was no showing that the testimony of the two officers would be disparate, and the officer, indeed both of them, were only peripherally involved in the criminal transaction charged. *See,* People v. Marquez, 546 P.2d 482 (Colo. 1976). Moreover, our review of Officer Huggins' testimony makes it doubtful that the unidentified officer's testimony would be relevant and helpful· to appellant's defense. The question is one that requires a balancing of the public interest in protecting the flow of criminal intelligence information against the accused's right to prepare his defense, taking into consideration the crime charged, possible defenses, the significance of the proffered testimony, and other relevant factors. *Roviaro, supra.*

We are not persuaded that the trial court's refusal to compel disclosure of the officer's identity was error.

The undercover officer could not be called in an attempt to establish an entrapment defense because no entrapment occurred. Appellant himself testified that he subsequently revisited Operation Switch on his own initiative to sell credit cards belonging to another and that after the initial contact he never saw the undercover officers again. This evidence of predisposition precludes an entrapment defense. United States v. Alexander, 495 F.2d 552 (2nd Cir. 1974). The fact that the government affords the opportunity or facility for the commission of an offense charged does not constitute entrapment. *See,* Lightford v. State, 91 Nev. 482, 538 P.2d 585 (1975); United States v. Russell, 411 U.S. 423 (1973); Sherman v. United States, 356 U.S. 369 (1958); Sorrells v. United States, 287 U.S. 435 (1932). Had appellant been arrested and charged in connection with his initial transaction at Operation Switch, a causal

connection would have been shown, entrapment would have been an arguable issue, and the need for the disclosed identity reasonably compelling. Here, however, Brown was charged for his own independent activity, and the undercover officer was not a material witness. *Cf.* Jones v. State, 93 Nev. 178, 564 P.2d 605 (1977). Relative to appellant's claim of entitlement to entrapment instructions, it is axiomatic that the "defendant in a criminal case is entitled to have the court instruct the jury about his theory of defense, *if there is evidence to support it.*" Barger v. State, 81 Nev. 548, 550-51, 407 P.2d 584, 585 (1965). (Emphasis added.) *Accord,* Wyatt v. State, 77 Nev. 490, 367 P.2d 104 (1961). Appellant returned to Switch in his own car and sold recently stolen credit cards that he obtained in some unknown way. Here, there is no evidence at all to indicate that police entrapped Brown to return to Operation Switch. There was no error.

3. *Disclosure of testifying witness's address.*

Appellant attempted to ascertain the home address of Officer Huggins, the undercover officer who testified at trial. The proffered motive for the request was to enable appellant to investigate the witness's background for possible impeachment. The court inquired whether Brown had an offer of proof to indicate why the officer's home address was necessary and when the defense stated it had no offer, the court refused to permit disclosure.

In Pointer v. Texas, 380 U.S. 400, 403 (1965), the Supreme Court held that the Sixth Amendment right of an accused to confront the witnesses against him is a "fundamental right . . . made obligatory on the states by the Fourteenth Amendment." We query whether appellant was denied that right.

Brown cites Smith v. Illinois, 390 U.S. 129 (1968) and Alford v. United States, 282 U.S. 687 (1931), for the proposition that a defendant is entitled to know the address of a prosecution witness. However, we interpret *Smith* and *Alford* as protecting an accused's right to a meaningful cross-examination, not as establishing a *per se* requirement of disclosure. The court in United States v. Harris, 501 F.2d 1, 9 (9th Cir. 1974), recognized that

> in some instances the trial court could legitimately permit the witness not to disclose his residence. If the answer may subject the witness to harassment, humiliation, or danger, then non disclosure of the witness' home address may be justifiable.

There is ample authority holding that an undercover law enforcement officer need not divulge his residence. United

States v. Alston, 460 F.2d 48 (5th Cir. 1972); People v Pleasant, 244 N.W.2d 464 (Mich. App. 1976).

In *Smith, supra,* a narcotics case, a prosecution informer refused to reveal both his home address and true name. Confronted with not only this absence of information, but further the fact that the witness was unemployed, the defense was denied the right to reasonably explore the witness's circumstances for purposes of discrediting the testimony in chief. There, as here, the witness was essential to the prosecution's case. *Alford, supra,* bears a close similarity to *Smith,* magnified by the fact that there the witness in question might himself have been incarcerated at the time of trial. In those cases, the right of confrontation guaranteed by the Sixth Amendment was significantly impaired.

In the instant case, the witness testified that he was an undercover police officer, working as such at the time of trial, gave his full name and city of residence, gave his employment history in law enforcement in reasonable detail, and fully described his involvement in Operation Switch. The only element of his status that Officer Huggins did not disclose was his actual home address. Further, he was extensively cross-examined by appellant. Finally, sufficient reason was given for nondisclosure, thereby allowing the trial judge to make an informed ruling. See, *Alston, supra.* Here, the appellant had adequate pre-trial opportunity to investigate the undercover officer's background, including his employment record, and failed to do so.

The court in *Alston,* supra, stated that

> [i]t is significant here that [the witness] is an agent, not an informer. In almost every other case of this ilk, the witness whose address is requested is merely an informer, one who is under absolutely no obligation to provide information and who is subject to no official supervision. . . . [T]here appears to be less need to require a home address for an identified agent . . . than there might be for a witness whose motive or background might be subject to considerably less supervision and correspondingly greater doubt.

460 F.2d at 53. Appellant's right of confrontation was not violated.

4. *Refusal of jury instruction and denial of argument pertaining to alleged "outrageous police practices."*

The trial court rejected the following jury instruction offered

by appellant. "Any person, except the issuer, who sells a credit card, or any person who buys a credit card from a person other than the issuer is guilty of the crime of sale or purchase of a credit card." Appellant wanted to indicate that the undercover officers themselves engaged in illegal activity when they purchased and sold the regularly issued credit card. Brown argued that the credit cards were not props but rather legitimate credit cards, the purchase and sale of which even by police officers in the course of their duties constitutes a crime.

The trial court did not err in refusing appellant's proffered instruction. That instruction, reproduced above, was very similar to instruction number five which was given to the jury.[1] Both instructions were virtually identical to the proscription of the statute, NRS 205.710, which reads: "Any person, except the issuer, who sells a credit card, or any person who buys a credit card from a person other than the issuer is guilty of a gross misdemeanor." A refusal to give a proffered jury instruction is not error if the instructions given properly cover the subject matter of the offered instruction. Cranford v. State, 76 Nev. 113, 349 P.2d 1051 (1960). The trial court committed no error.

Appellant next claims prejudice in that he was denied an opportunity to argue the allegedly "outrageous police practices" to the jury. He claims that because no statutory exemption is provided to permit law enforcement officers to engage in this form of transaction there exists no immunity and that the behavior then becomes "outrageous police practices". *Russell, supra,* suggests that some tactics by law enforcement officers may be so outrageous that they in effect deny due process. *See, also,* United States v. Spivey, 508 F.2d 146 (10th Cir. 1975), *cert. denied,* 421 U.S. 949. Whether such tactics violate "fundamental fairness, shocking to the universal sense of justice" is a matter of law within the province of the court alone and the trial court could, as here, properly conclude that such violation did not occur. *Russell, supra,* 411 U.S. at 432; Sparkman v. State, 88 Nev. 680, 504 P.2d 8 (1972).

The judgment of conviction is affirmed.

BATJER, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.

---

[1] Instruction number five read as follows: "Any person, other than the issuer of the credit card, who sells the credit card, is guilty of the crime of Sale of a Credit Card."