RICHARD EUGENE BUSHNELL, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 10136

September 12, 1979                                           599 P.2d 1038

*William N. Dunseath,* Public Defender, and *Michael B.
McDonald,* Deputy Public Defender, Washoe County, for
Appellant.

*Richard Bryan,* Attorney General, Carson City; *Calvin R.
X. Dunlap,* District Attorney, and *Bruce R. Laxalt,* Deputy
District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, Zenoff, Sr. J.:[1]

Richard Bushnell and Michael Sloan were charged with the robbery of a beauty salon in Reno on November 4, 1976. Sloan entered a plea of guilty and Bushnell subsequently was found guilty at a jury trial at which Sloan testified on behalf of the State that Bushnell was an equal participant in the robbery.

After Bushnell's trial, Sloan recanted his testimony claiming that he had been motivated to testify falsely against Bushnell. According to Sloan, he had been badly treated while in a Texas

---

[1]The Chief Justice designated Honorable David Zenoff, Senior Justice, to sit in this case in place of The Honorable Gordon Thompson, Justice, who was disqualified. Nev. Const. art. 6, § 19; SCR 243.

prison for an earlier crime, and hoped for favorable treatment from the prosecution and the trial court to avoid being returned there for parole violation in exchange for his testimony.

Bushnell's principal ground for appeal centers upon the refusal of the trial court to allow the cross-examination of Sloan to extend to the purported bad treatment in Texas and his fears of what would happen to him if he were returned. Sloan admitted that the Nevada authorities made no promises of favorable treatment in exchange for his testimony, but Bushnell contends nevertheless that if the jury had been permitted to hear Sloan's concerns about Texas, Sloan's credibility would have been materially impeached.

Bushnell and Sloan, down the block neighbors in Suisun, California, decided impulsively to go to Renor for a day to do some gambling. They soon ran out of money. From that point they each laid the blame on the other. It is clear that Sloan appeared at a beauty salon and told the operator that the fellow looking in the window would shoot if she did not hand over the cash. She saw appellant Bushnell looking in the window, handed the cashbox to Sloan who exited and was joined by Bushnell. They left together in the vehicle that they had used to drive to Reno; they were stopped for a traffic violation and ticketed; a radio dispatch soon pinpointed them as targets for the robbery; they engaged in a wild police chase which ended in a collision and their apprehension.

1.   Generally, the permissible extent of cross-examination is largely within the sound discretion of the trial court. However, there is a variation between the latitude of that discretion where cross-examination is utilized to attack a witness's general credibility, and where its purpose is to expose bias. In the former situation, the broadest discretion is allowed, and the court may properly restrict inquiry to the witness's prior felony convictions as opposed to a mere arrest or extraneous circumstances of the conviction. Johnson v. State, 82 Nev 338, 418 P.2d 495 (1966). However, the trial court's discretion is more narrow where bias is the object to be shown, and an examiner must be permitted to elicit any facts which might color a witness's testimony. Azbill v. State, 88 Nev. 240, 495 P.2d 1064 (1972); State v. Fitch, 65 Nev. 668, 200 P.2d 991 (1948). The bounds of the trial court's discretion are limited too by the well-founded rule that the widest latitude be given a defendant in cross-examining an accomplice as to his motives for testifying. See United States v. Bagsby, 489 F.2d 725 (9th Cir. 1973); United States v. Padgent, 432 F.2d 701 (2d Cir. 1970); United States v. Dickens, 417

F.2d 958 (8th Cir. 1969); United States v. Masino, 275 F.2d 129 (2nd Cir. 1960); Evans v. State, 550 P.2d 830 (Alaska 1976); People v. Baker, 158 N.E.2d 1 (Ill. 1959); State v. Brown, 321 A.2d 478 (Me. 1974); State v. Ponthier, 346 P.2d 974 (Mont. 1959); State v. Smith, 119 N.W.2d 838 (Minn. 1962); Commonwealth v. Coades, 311 A.2d 896 (Pa. 1973); Woody v. Commonwealth, 199 S.E.2d 529 (Va. 1973); State v. Wilson, 424 P.2d 650 (Wash. 1967). *See also* United States v. Harris, 501 F.2d 1 (9th Cir. 1974); State v. Little, 350 P.2d 756 (Ariz. 1960) (defendant given widest latitude in cross-examining government informant).

In this respect, the witness's hopes for lenient treatment are relevant and it is immaterial whether actual promises were made to the witness. State v. Little, *supra;* State v. Brown, *supra;* State v. Smith, *supra.* The only proper restriction should be those inquiries which are repetitive, irrelevant, vague, speculative, or designed merely to harass, annoy or humiliate the witness. Evans v. State, *supra; see* Alford v. United States. 282 U.S. 687 (1931).

In the case at bar, appellant, in cross-examining his accomplice Sloan, attempted to elicit the facts that Sloan was on parole in Texas, that he harbored tremendous fears of returning there as well as hopes that the Nevada authorities might not compel his return if he testified favorably for the prosecution against appellant. This was neither repetitive, irrelevant, vague, speculative, nor designed to harass, annoy or humiliate, but was clearly proper inquiry on cross-examination of an accomplice to show bias, and the record shows that counsel made that specific purpose clear to the trial court. It was error to restrict appellant's cross-examination of Sloan to actual promises made by the prosecution.

Without any showing at all of Sloan's motivation, the error might be perceived as reversible. However, considering the information that was elicited from Sloan on cross-examination, and given the physical facts and testimony of other witnesses, we find the evidence of appellant's guilt overwhelming and the trial court's error harmless beyond a reasonable doubt.

Sloan testified that he had already served time in prison in Texas for a felony conviction, that he had plead guilty to this crime of robbery, and that he had not yet been sentenced for the robbery here. Thus, although the prohibited inquiry into the Texas affair would have been relevant to show the strength of his motivation for favorable treatment in sentencing, the basic motivation itself was nevertheless clearly inferable by the

jury. Moreover, there is overwhelming evidence of appellant's guilt.

Bushnell had several opportunities to avoid participation in the crime, and even to stop it, yet he failed to do so. He stared into the beauty salon window for a full three minutes, watching the robbery take place, joined Sloan at the door, left hurriedly with him, and while they were attempting to escape the police, took the cashbox from Sloan, put the cash in his pocket (where it was found by the police), and threw the box out the window. Appellant testified that immediately prior to the robbery, the two men stood around and spoke to a ticket vendor at the theater next door to the beauty salon, but that nothing was said about their wives. Appellant was "caught in a lie" when the ticket vendor was called to testify on rebuttal. She clearly indicated that appellant had explained their loitering around the theater was because they were waiting for their wives to get their hair done next door.

These facts defy appellant's contention that he was Sloan's innocent dupe. The error in restricting appellant's cross-examination of Sloan was harmless beyond a reasonable doubt and does not require reversal.

2. During deliberations, the jury requested the trial judge answer certain questions. In response, the judge sent a written note to the foreman, explaining that the jury was confined to the record and instructions given, and that it would be improper for the court to advise them on matters of evidence or testimony. As one basis of his motion for new trial, Bushnell alleged the exchange of notes culminated in juror misconduct. To support this allegation, Bushnell offered one juror's affidavit stating that the foreman, upon receiving the court's reply note, read it silently and then informed the other jurors that "the judge's answer is that if the defendant was present during the robbery he should be convicted" or words to that effect. The court apparently rejected the juror affidavit as incompetent evidence given by juror to impeach his own verdict.

Nevada law allows juror testimony regarding objective facts or overt conduct constituting juror misconduct. NRS 50.065 (2); NRS 48.025; Barker v. State, 95 Nev. 309, 594 P.2d 719 (1979). Whether or not the foreman uttered the alleged words is an objective fact. If made, the utterance clearly constituted juror misconduct. Since it obviously misrepresented the content of the judge's communication, it effectively relayed an unauthorized and erroneous instruction to the other jurors, under the guise of judicial sanction.

Thus, as testimony regarding an objective fact constituting juror misconduct, the affidavit was competent evidence impeaching the verdict. We therefore order a limited reversal and remand for further inquiry to determine if the alleged misconduct did indeed occur. If the trial court finds that it did, a new trial must be granted unless it appears beyond a reasonable doubt that no prejudice resulted. Barker v. State, *id.*

Affirmed in part; reversed and remanded in part.

MOWBRAY, C. J., and GUNDERSON, and BATJER, JJ., concur.

MANOUKIAN, J., concurring and dissenting:

I concur in the majority's holding and its treatment of the jury misconduct issue. NRS 50.065(2); NRS 48.0125; Barker v. State, 95 Nev. 309, 594 P.2d 719 (1979). However, I respectfully dissent from that part of the opinion which labels as harmless error the trial court's refusal to allow the full cross-examination of Sloan, an admitted participant in the robbery, who became a crucial witness for the state. I believe that my brethren have failed to afford to appellant the extent of justice to which he is entitled.

As part of the state's case in chief, Sloan testified that he and Bushnell conspired to commit the robbery. Conversely, appellant emphatically denied complicity in the offense. The sole contested issue at trial was appellant's state of mind at the time Sloan walked into and robbed the beauty shop. Only appellant and Sloan gave direct testimony on the issue of Bushnell's *mens rea,* and since the circumstantial evidence of Bushnell's intent was rather ambiguous, Sloan's trustworthiness was critical.

On appellant's cross-examination of Sloan, it was revealed that Sloan had previously been convicted of robbery in Texas, that he had served eight years of the sentence, during which confinement he was allegedly "mistreated," and that he was subsequently paroled from that sentence. Thereupon, the prosecution objected to any further questioning on the subject. Appellant then made an offer of proof to the effect that in view of the past physical abuse inflicted by Texas correctional authorities, Sloan entertained significant fear of being returned to the Texas parole hold, that indeed, Sloan was hopeful that in return for his testimony, the Texas hold might be dropped, and that he was likewise hopeful of leniency in Nevada. This, appellant argued, evidenced Sloan's motive to color his testimony against him. Nevertheless, the lower court sustained the state's objection to the relevancy of the examination.

Defense counsel was not attempting simply to challenge

Sloan's general credibility, Johnson v. State, 82 Nev. 338, 418 P.2d 495 (1966), but specifically sought to demonstrate the existence of bias. The examiner should have been permitted to pursue his elicitation of the claimed discrediting testimony. Azbill v. State, 88 Nev. 240, 495 P.2d 1064 (1972). Although Bushnell himself testified peripherally to some of these matters, it is obvious that his testimony did not substitute for a probing inquiry of the witness Sloan.

In Franklin v. State, 94 Nev. 220, 557 P.2d 860 (1978), we recognized the dangers inherent in accomplice testimony. NRS 175.291(1) requires corroboration of such testimony. I view this as a legislative recognition of the suspect nature of accomplice testimony. *See* State v. Barnett, 437 P.2d 821 (Ore. 1968); State v. Azzone, 135 N.W.2d 488 (Minn. 1965). Surely an accomplice has a compelling motive for gaining favor with prosecuting authorities.

My colleagues state that the witness's hopes for lenient treatment are relevant and that it is immaterial whether actual promises were made. In the context of the instant case, I agree. Furthermore, my brethren acknowledge the settled rule that the widest latitude must be given an accused to examine an accomplice as to his motives for testifying. *See* United States v. Bagsby, 489 F.2d 725 (9th Cir. 1973); United States v. Padgent, 432 F.2d 701 (2d Cir. 1970).

The primary object of the confrontation clause embodied within the Sixth Amendment is to assure an accused the right to a meaningful cross-examination of the witnesses against him. Brown v. State, 94 Nev. 393, 580 P.2d 947 (1978); see also Douglas v. Alabama, 380 U.S. 415 (1965); and Green v. McElroy, 360 U.S. 474 (1959), holding the exposure of a witness's motivation for testifying a proper and important function of the constitutionally protected right of cross-examination.

The evidence appellant attempted to elicit through Sloan was neither confusing, misleading nor unduly time consuming, NRS 48.035, and the prohibited examination was an otherwise proper inquiry into matters relevant and material to the witness's credibility and possible bias. *See* Cosley v. State, 93 Nev. 352, 566 P.2d 83 (1977). Thus, although I agree that it was error to restrict appellant's cross-examination of Sloan, I disagree with that part of the majority opinion which dismisses the error as harmless.

The error was not harmless. The evidence was admittedly close. The case was reduced to the single issue of determining appellant's *mens rea*. During their deliberations, the jury asked a question concerning witness Sloan's credibility. Eight hours

were required to reach a verdict, compare, State v. Bailey 300 P.2d 975 (Ore. 1956), and Sloan later apparently sought to recant his testimony. The harm likely resulting from the exclusion of what I consider rather crucial cross-examination relating to the believability of the alleged accomplice cannot meaningfully be evaluated by this Court on appeal. *See* Davis v. Alaska, 415 U.S. 308 (1974); Alford v. United States, 282 U.S. 687 (1931). On this record, the probability that prejudice resulted is great. Compare Turner v. Louisiana, 379 U.S. 466 (1965).

In my opinion, the unwarranted limitation of appellant's examination of the state's key witness deprived him of his right to a fair trial. The error was not harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967). I would reverse the conviction and remand for a new trial.