EDWARD DONALD ECKERT, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 10583

January 24, 1980                                    605 P.2d 617

GUNDERSON and BATJER, JJ., dissented.

*Michael A. Cherry,* Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City, and *Roy A. Woofter,* Special Prosecutor, Las Vegas, for Respondent.

**OPINION**

By the Court, MANOUKIAN, J.:

Edward Donald Eckert appeals from four felony convictions

for first-degree kidnaping, a robbery and an extortion, each perpetrated with the use of a deadly weapon. There are several assignments of error; however, only the following claims warrant our consideration. They are: (1) the trial court abused its discretion in disallowing proffered alibi testimony; (2) the trial court erred in limiting the cross-examination of a state's witness; (3) error occurred when the trial court refused to require an alleged suspect to invoke the fifth amendment before the jury; and (4) the kidnaping and deadly weapon enhancement charges merged with the crimes of robbery and extortion. We turn to consider these contentions, summarily rejecting the remaining assignments of error.

On June 7, 1976, at approximately 8:00 p.m., Victor Trapani, a former employee of Michael Gaughan, a principal owner of the Royal Inn Casino in Las Vegas, arrived at the Gaughan residence in Las Vegas, ostensibly for a visit. Paula Gaughan and her sister, Patsy Rampolla, were at the residence when Trapani arrived. At about 8:30 Trapani stepped out of the home for a few minutes to check his dogs and upon his return he was accompanied by a gunman, later identified as the appellant. Trapani, an accomplice and feigned victim, was instructed by Eckert to tie up each of the occupants with duct tape, during which time Eckert informed them to remain quiet and to comply with his orders. Eckert then demanded a valise and requested Trapani to obtain one from the living room. After learning that Mr. Gaughan was out of the country and unavailable to disclose the combination for the casino's main vault, and as he held the occupants at gunpoint, appellant directed Mrs. Gaughan to telephonically summon Tony Hegler, the casino's general manager, and in doing so, to fabricate a reason for Hegler to come to the residence quickly. She did so and, shortly thereafter, Hegler arrived accompanied by Gene Cozzolino, another casino employee. Thereafter, Cozzolino was placed in a chair and bound as the others had been. Eckert then held a gun to Hegler's head in an effort to obtain the vault's combination. When Eckert learned that Hegler was unaware of the combination, he instructed Hegler and Trapani to go to the casino and to return with $125,000 from the cashier's cage. Appellant threatened to kill the remaining occupants if his instructions were not carried out. The two men, pursuant to the instructions, went to the casino and near 10:00 p.m., returned with approximately $53,000 in the valise, after which Eckert quickly exited.

*1. The Proffered Alibi Witness.*

The trial court disallowed a witness' testimony because of

appellant's failure to afford the state with timely notice of proposed alibi testimony.[1] Appellant contends that such disallowance constitutes reversible error. We disagree. As we have stated:

> Statutes such as NRS 174.087(1) which require notice to the prosecution when an alibi defense is contemplated are usually strictly applied. Annot. 30 A.L.R.2d 480 (1953). Strict compliance is compelled with the purpose of preventing the "popping up" of alibi witnesses at the eleventh hour when the prosecution will be unable to investigate the veracity of the alibi testimony. Williams v. Florida, 399 U.S. 78 (1970); State v. Dodd, 418 P.2d 571 (Ariz. 1966); People v. Schadd, 292 N.Y.S. 616, 617 (Queen's County Ct. N.Y. 1936); State ex rel. Simos v. Burke, 163 N.W.2d 177 (Wis. 1968).

Founts v. State, 87 Nev. 165, 169, 483 P.2d 654, 656 (1971).

Eckert sought to have one Janice Zureck testify that they were together at the time of the alleged robbery. Appellant failed to provide the state with the notice-of-alibi—written or oral—until the conclusion of the state's case-in-chief and following the first defense witness after the fourth day of trial. *Founts* expressly places the decision as to admission of alibi evidence within the discretion of the trial court when *good cause* is shown irrespective of non-compliance with the statute. *Id.* at 169-70, 483 P.2d at 657. In jurisdictions where the trial courts have exercised their discretion and disallowed alibi testimony because of non-compliance with a notice-of-alibi statute, the appellate courts have rarely found abuse. Cox v. State, 219 So.2d 762, 765 (Fla. Dist. Ct. App. 1969); State v. Selbach, 68 N.W.2d 37, 38 (Wis. 1955). For a well-reasoned analysis in a

---

[1]NRS 174.087 provides in part:

1. A defendant in a criminal case who intends to offer evidence of an alibi in his defense shall, not less than 10 days before trial or at such other time as the court may direct, file and serve upon the district attorney a written notice of his intention to claim such alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as are known to defendant or his attorney, the names and addresses of the witnesses by whom he proposes to establish such alibi.

. . . .

4. *If a defendant fails to file and serve a copy of such notice* as herein required, *the court may exclude evidence offered* by such defendant for the purpose of proving an alibi, except the testimony of the defendant himself. If such notice is given by a defendant, the court *may exclude the testimony of any witness offered* by the defendant for the purpose of proving an alibi if the name and address of such witness, as particularly is known to the defendant or his attorney, is not stated in such notice. (Emphasis added.)

similar situation, see Founts v. State, 87 Nev. at 174, 483 P.2d at 657–659 (BATJER, J., concurring in part and dissenting in part).

In *Founts,* this court enumerated several factors demonstrating good cause. Included in these factors were considerations as to whether an excuse was shown for the omission and whether "the alibi had such substance as to have probative value to the defense . . . ." *Id.* at 169, 483 P.2d at 656. We find nothing which demonstrated good cause. Appellant informed his counsel at the time he was first represented that a young lady could testify for him. Appellant attempted to locate her himself more than three weeks prior to trial and no notice of such possible witness was conveyed to the state.[2] Additionally, unlike in *Founts,* the testimony would not have contradicted a "sole witness" against appellant.[3]

---

[2]It is noteworthy that appellant was previously charged and convicted of murder. Midway into that prior unrelated criminal trial, with the notice-of-alibi statute in force, appellant apparently unsuccessfully made a similar and belated offer of proof as to an alibi witness. See Eckert v. State, 91 Nev. 183, 533 P.2d 468 (1975) (reversed on other grounds with alibi error not raised on appeal). The record shows that the prosecutor, during the offer of proof hearing in the instant case, commented as to the previous similar unsuccessful attempt to produce an alibi witness.

[3]We note that, unlike in *Founts,* several witnesses testified to the events and there was overwhelming evidence of appellant's participation. Several state's witnesses testified as to the type of clothing and shoes worn by appellant during the robbery, as well as to the guns and false beard, mustache and dark glasses used. Moreover, not only is there substantial evidence of appellant's guilt presented by witnesses who were present at the crime scene, but there was additional testimony presented by acquaintances of appellant which directly contradicted the offered alibi testimony. Witnesses identified the guns used to commit the offenses, the clothing and disguise worn by Eckert, and the type of duct tape used to bind the victims during the commission of the crimes, which was admitted into evidence. Eckert had used Laura Fiorentino's automobile from June 4 through the 8th. Fiorentino stated that prior to the robbery, appellant removed from her vehicle a roll of duct tape of the type used by the gunman. Appellant admitted the truthfulness of the latter testimony. Indeed, appellant's own testimony as to periods of time cannot be reconciled with that given by Laura Barker and Laura Fiorentino, both of whom placed Eckert at Fiorentino's apartment at times Eckert claims in his offer of alibi to have been with Janice Zureck. It is undisputed that the offenses were committed during a continuous period between the hours of 8:45 and 10:00 p.m. Appellant's own alibi testimony is that after he dropped Janice Zureck off at her residence at about 8:30 p.m. or so, he returned to Ms. Fiorentino's home as early as 9:00 p.m. but no later than 10:00 p.m. He later testified that after returning to the Fiorentino residence, he left again at about 10:00 p.m. returning that same evening. Appellant's testimony is internally inconsistent and it was within the jury's province to either accept or reject it. Porter v. State, 94 Nev. at 146, 576 P.2d at 278. The proffered alibi witness allegedly would have testified to essentially the same facts. As such, it would have been merely cumulative. We do not believe such constitutes good cause for a late alibi notice.

Although the discretion vested in the trial judge is not unfettered, we should uphold the court's exercise of that discretion absent manifest abuse. *See* Brown v. State, 81 Nev. 397, 400, 404 P.2d 428, 430 (1965). No *good cause* was demonstrated to permit the alibi testimony, in view of this statutory non-compliance. Reese v. State, 95 Nev. 419, 423-24, 596 P.2d 212, 215-16 (1979); *cf.* State v. Adair, 469 P.2d 823, 826 (Ariz. 1970) (defendant gave proper notice of alibi, but failed to include names of all witnesses and gave no explanation of failure); Founts v. State, 87 Nev. at 169-70, 483 P.2d at 656-57 (state provided with pretrial notice of alibi and proffered testimony contradicted that of sole witness against accused).

"Given the ease with which an alibi can be fabricated," Williams v. Florida, 399 U.S. at 81, the government's interest in protecting against a belated defense and the suspect nature of the tendered alibi testimony, we are unable to conclude that the trial court erred in excluding Ms. Zureck's testimony.

2. *Restriction on Cross-Examination.*

The trial court sustained respondent's objection which had the effect of precluding Victor Trapani, a state's witness and initial co-defendant with appellant, from testifying as to the sentences he had faced incidental to the pre-plea bargaining charges. Appellant argues that such preclusion constituted reversible error. We do not agree.

Generally, the permissible extent of cross-examination is reserved to the sound discretion of the trial court. Where its purpose is to expose bias, the trial court's discretion is narrow and an examiner must be permitted to elicit any facts which might color a witness' testimony. Bushnell v. State, 95 Nev. 570, 599 P.2d 1038 (1979); Azbill v. State, 88 Nev. 240, 246, 495 P.2d 1064, 1068 (1972). Great latitude is given an accused, particularly in his cross-examination of an accomplice relative to his motives for testifying. Bushnell v. State, 95 Nev. at 572, 599 P.2d at 1038-39. In State v. Coleman, 579 P.2d 732, 747 (Mont. 1978), a case of aggravated kidnaping, error did not occur when cross-examination of an alleged accomplice was limited because the question was otherwise answered. During direct and cross-examination of Trapani, it was shown that Trapani and Tony Barker were all originally charged with the same offenses and that in consideration of Trapani's cooperation in an unrelated criminal proceeding, the state would dismiss all but one of the several felony counts. Here, every fact of the Trapani plea bargain, including reference to his felony guilty plea, and his five-year prison term was disclosed to the

jury. Additionally, it was emphasized on cross-examination and argued as an issue of accomplice credibility. The jury was made fully aware of the legal benefits derived by Trapani as a result of his agreeing to be a prosecution witness. Bushnell v. State, 95 Nev. at 573-74, 599 P.2d at 1040. Under these circumstances, it is clear that his testimony was not motivated by the hope or expectation of immunity or leniency on the part of prosecuting authorities. Appellant was given full opportunity to test Trapani's motives and interests together with the accuracy of the evidence presented through him. This assignment of error is without merit. *Cf.* Bushnell v. State, 95 Nev. 570, 599 P.2d 1038 (1979) (restriction on defendant's cross-examination of an accomplice was held harmless error).

*3. Barker's Fifth Amendment Right.*

Appellant contends that the trial court committed reversible error when it denied appellant's request that Tony Barker, who Eckert alleged to be Trapani's accomplice, and the gunman, be required to invoke his fifth amendment right in the presence of the jury. For the reasons we expressed in Foss v. State, 92 Nev. 163, 165-66, 547 P.2d 688, 690 (1976), we perceive no error.

*4. Merger of Crimes.*

The contention that the four crimes of first degree kidnaping were incidental to the robbery and extortion and were merged therein was decided by this court adversely to the appellant in this very case. *See* Eckert v. Sheriff, 92 Nev. 719, 721, 557 P.2d 1150, 1151 (1976).

Accordingly, we affirm the robbery, extortion and first degree kidnaping judgments and sentences.

MOWBRAY, C. J., and THOMPSON, J., concur.

GUNDERSON, J., with whom BATJER, J., concurs, dissenting:

A jury convicted Edward Donald Eckert of various crimes arising from an occurrence on June 7, 1976, at the residence of Michael and Paula Gaughan, in Las Vegas, where Gaughan was an owner of the Royal Inn Casino. Patsy Gaughan testified that at 8:30 p.m. on June 7, she and her baby, Patsy Rampolla and her son, and Victor Trapani were in the residence. Trapani left the house and, in a few minutes, returned with an armed intruder who wore sun glasses, a false beard and moustache, and who sometimes spoke with a lisp. After learning that Michael Gaughan was not present to divulge the combination for the Royal Inn's inner safe, the intruder demanded that Mrs.

Gaughan summon Tony Hegler, the casino's general manager. When Mr. Hegler arrived, the intruder put a gun to Hegler's head, and asked for the safe combination, which Hegler did not know. Throwing the attache case to Hegler, the intruder told him and Trapani to go to the casino, and to obtain all money in the safe. Hegler and Trapani did so. The intruder left the residence, carrying the attache case containing the money. Appellant was later identified as the intruder.

At trial, appellant testified he had been with Janice Zureck at Lake Mead on June 7, 1976. He assertedly took Zureck home about 8:30 p.m. or 8:45 p.m. Although he testified he was not the intruder, he admitted that, after the crimes, he had accepted $2,500 from Anthony Barker to dispose of two guns and a false beard. The appellant's theory was that Barker and Trapani committed the crimes, and that another owner of the Royal Inn was involved also. (Trapani was Eckert's co-defendant, and the State originally charged Barker with the same crimes.)

The trial judge excluded Janice Zureck's testimony, for failure to give a timely notice of alibi testimony. Appellant contends exclusion of the alibi testimony is reversible error. We agree.

NRS 174.087(4),[1] as amended in 1971, is permissive. It allows introduction of alibi testimony despite noncompliance with the provisions for notice. Whether good cause has been shown for allowing the testimony can be determined only by a review of the particular facts and circumstances of each case. Founts v. State, 87 Nev. 165, 483 P.2d 654 (1971).

In *Founts, id.,* at 169, 483 P.2d at 656, we set forth factors considered by other states in determining whether good cause existed for exercising a trial court's discretion to allow the alibi

---

[1]NRS 174.087 states in material part:

"1. A defendant in a criminal case who intends to offer evidence of an alibi in his defense shall, not less than 10 days before trial or at such other time as the court may direct, file and serve upon the district attorney a written notice of his intention to claim such alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as are known to defendant or his attorney, the names and addresses of the witnesses by whom he proposes to establish such alibi.

". . . .

"4. If a defendant fails to file and serve a copy of such notice as herein required, *the court may exclude evidence offered* by such defendant for the purpose of proving an alibi, except the testimony of the defendant himself. If such notice is given by a defendant, the court *may exclude the testimony of any witness offered* by the defendant for the purpose of proving an alibi if the name and address of such witness, as particularly as is known to the defendant or his attorney, is not stated in such notice." (Emphasis added.)

testimony. The factors applicable to this case are whether the testimony was sought to be introduced at such a late time that even an adjournment for investigation would not cure the prejudice to the State; whether an excuse was shown for omitting to give the State notice; and, whether the alibi had such substance as to have probative value.

Appellant's attorney advised the special prosecutor there was an alibi witness on Thursday, October 6, 1977, the fourth day of trial. The trial judge directed appellant's attorney to provide to the special prosecutor all of the information appellant had. The issue was set for argument on October 7, 1977, prior to continuation 'of appellant's case. Appellant had called only Michael Gaughan to testify on October 6, 1977.

At the hearing, appellant's attorney informed the court that appellant advised him at the outset of his representation that a "Jan" could testify she had been with appellant at the time the crime was alleged to have occurred. Appellant doubted an investigator could locate Jan, and stated he would try to find her himself. He was also concerned that, if Jan learned investigators were searching for her, she would not come forward. Appellant's attorney informed him that a notice of alibi would be required. Two weeks before trial, appellant gave his attorney the names "Janice Zureck" or "Janice Jureck." During the week prior to trial, appellant informed counsel that someone at the prison could possibly locate the witness. The attorney's staff thereafter learned the correct name was "Janice Zureck." On either the Friday preceding trial, or on the day trial was to commence, the witness Janice Zureck contacted appellant's attorney. After interviewing her on Tuesday or Wednesday, the attorney then notified the state, as described above. An offer of proof was made that Zureck would testify she had been with appellant during the day, and at the time of the crime, on June 7, 1976.

The need for Zureck's testimony is evident. The intruder wore a false beard, false moustache, and sunglasses, and apparently attempted to disguise his voice by speaking with a lisp. Credible testimony from Janice Zureck that she was with appellant at 8:30 p.m., the time the witnesses testified the intruder entered the Gaughan house, could have exonerated the appellant.

The State did not show prejudice to its case beyond that engendered by any continuance, but requested no continuance.[2] Appellant, who had been in custody since his indictment, agreed to continue the trial for any time necessary.

---

[2]The special prosecutor represented to this court at oral argument that he interviewed Janice Zureck and determined further investigation would be needed in order to cross-examine her.

In deciding that the appellant presented good cause to allow the introduction of alibi testimony, we note the language used by the Supreme Court in Williams v. Florida, 399 U.S. 78 (1970), in which the high court determined that a notice of alibi statute similar to ours was constitutional. The Court said, at 83, n.14:

> We emphasize that this case does not involve the question of the validity of the threatened sanction, had petitioner chosen not to comply with the notice-of-alibi rule. Whether and to what extent a State can enforce discovery rules against a defendant who fails to comply, by excluding relevant, probative evidence is a question raising Sixth Amendment issues which we have no occasion to explore. . . .

We think the trial court erroneously excluded relevant, probative evidence as a means of enforcing a discovery rule, despite a showing of good cause for non-compliance with the rule. *Cf.* Barker v. State, 95 Nev. 309, 315, 594 P.2d 719, 722–723 (1979).

Other contentions of error need not be addressed inasmuch as it does not appear they would necessarily reoccur.

We would reverse and remand for new trial.